Case: 1:23−mc−00084
Assigned To : Boasberg, James E.
Assign. Date : 8/21/2023
Description: MISC.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

IN RE PRESS APPLICATION FOR ACCESS
TO JUDICIAL RECORDS IN CASE NO.
23-SC-31, IN THE MATTER OF THE
SEARCH OF INFORMATION THAT IS
STORED AT PREMISES CONTROLLED
BY TWITTER, INC.

Case No. _____

Hearing Requested

**PRESS APPLICATION FOR ACCESS TO JUDICIAL RECORDS IN
CASE NO. 23-SC-31, IN THE MATTER OF THE SEARCH OF INFORMATION
THAT IS STORED AT PREMISES CONTROLLED BY TWITTER, INC.**

Pursuant to Local Criminal Rules 57.6 and 6.1, Advance Publications, Inc., American

Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Bloomberg L.P., Cable

News Network, Inc., CBS Broadcasting, Inc. o/b/o CBS News, Dow Jones & Company, Inc.,

publisher of The Wall Street Journal, The E.W. Scripps Company, Fox News Network, LLC,

USA TODAY, a publication operated by subsidiaries of Gannett Co., Inc., Gray Media Group,

Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National

Cable Satellite Corporation d/b/a C-SPAN, NBCUniversal Media, LLC d/b/a NBC News, The

New York Times Company, POLITICO LLC, Radio Television Digital News Association,

Reuters News & Media Inc., TEGNA Inc., Telemundo Network Group LLC d/b/a Noticias

Telemundo, Univision Networks & Studios, Inc., and WP Company LLC d/b/a The Washington

Post (together, the "Press Coalition") respectfully move for access to judicial records in Case No.

23-sc-31 (D.D.C.), *In the Matter of the Search of Information That Is Stored at Premises

Controlled by Twitter, Inc.* ("*In re Twitter*").

Specifically, and for the reasons set forth in the accompanying Memorandum of Points

and Authorities, the Press Coalition seeks access to the following records in *In re Twitter*: (1) all

warrant application materials, including the Government's affidavit establishing probable cause



RECEIVED

8 - 21 - 2023

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

for the search warrant (the "Affidavit"); (2) all sealing-related motions and orders; (3) the docket

listing all filings in the matter; and (4) all other judicial records, including any audio recordings

of any hearings, as to which there is no longer a compelling need for secrecy.

Counsel for the Press Coalition conferred by email on August 21, 2023, with counsel for

the United States, who informed the undersigned that they oppose the relief sought in this

Application.  Counsel for the Press Coalition met by telephone on August 20, 2023 and by email

on August 21, 2023 with counsel for Twitter.  Counsel for Twitter advised that Twitter consents

to the relief sought in this Application with three exceptions.  Twitter asks that the Court

maintain the redactions on (1) the name of the Senior Counsel at Twitter who signed the

Declaration that Twitter submitted to the Court, *see* Twitter's Opp. to Gov't Mot. for an Order

to Show Cause (Feb. 6, 2023) Ex. A, and (2) the name of the person who the record reflects held

the email account associated with the Twitter account @realDonaldTrump, *see* Feb. 9, 2023 Hr'g

Tr. at 23:1-25.  Twitter also takes no position on whether the Court should maintain the redaction

at the bottom of the final page of Attachment B to the warrant.  The Press Coalition has agreed

that it will not at this time seek the name of the Senior Counsel at Twitter who signed the

Declaration. The Press Coalition does, however, ask the Court to remove the redaction of the

person who held the email account associated with @realDonaldTrump.

Dated:  August 21, 2023

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Chad R. Bowman (#484150)
Lauren Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200

Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
bowmanchad@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PRESS APPLICATION FOR ACCESS TO JUDICIAL RECORDS IN CASE NO. 23-SC-31, IN THE MATTER OF THE SEARCH OF INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY TWITTER, INC. | Case No. _____<br><br>Hearing Requested |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PRESS APPLICATION FOR ACCESS TO JUDICIAL RECORDS IN
CASE NO. 23-SC-31, IN THE MATTER OF THE SEARCH OF INFORMATION
THAT IS STORED AT PREMISES CONTROLLED BY TWITTER, INC.**

BALLARD SPAHR LLP

Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Chad R. Bowman (#484150)
Lauren Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
bowmanchad@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*

# PRELIMINARY STATEMENT

Pursuant to Local Criminal Rules 57.6 and 6.1, Advance Publications, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Bloomberg L.P., Cable News Network, Inc., CBS Broadcasting, Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Fox News Network, LLC, USA TODAY, a publication operated by subsidiaries of Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Cable Satellite Corporation d/b/a C-SPAN, NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, POLITICO LLC, Radio Television Digital News Association, Reuters News & Media Inc., TEGNA Inc., Telemundo Network Group LLC d/b/a Noticias Telemundo, Univision Networks & Studios, Inc., and WP Company LLC d/b/a The Washington Post (together, the "Press Coalition") respectfully move for access to judicial records in Case No. 23-sc-31 (D.D.C.), *In the Matter of the Search of Information That Is Stored at Premises Controlled by Twitter, Inc.* ("*In re Twitter*").

On August 9, 2023, the U.S. Court of Appeals for the District of Columbia published a redacted version of a thirty-four-page decision affirming the District Court's order in *In re Twitter*, which held Twitter in contempt for failing promptly to comply with a search warrant. At least part of the D.C. Circuit docket in that case has also been unsealed *sua sponte*, and the District Court has released roughly 500 pages of records from the *In re Twitter* matter as well, including a warrant served on Twitter in connection with the Special Counsel's investigation of former President Donald J. Trump.

While sealing the records in *In re Twitter* may at one time have been justified, to the extent that the Government properly exercised its authority under the Stored Communications

Act to seek a nondisclosure order,[1] further secrecy is no longer appropriate in light of the

unsealing since August 9 and the subsequent expiration of the original, broad nondisclosure

order.  Indeed, while some records have now been disclosed, other important records remain

under seal, including the Government's application for the warrant and, importantly, the docket

itself.  Applicants therefore seek access to the following records in *In re Twitter*: (1) all warrant

application materials, including the Government's affidavit establishing probable cause for the

search warrant (the "Affidavit"); (2) all sealing-related motions and orders; (3) the docket listing

all filings in the matter; and (4) all other judicial records, including any audio recordings of any

hearings, as to which there is no longer a compelling need for secrecy.

## BACKGROUND

From his first day in office, Trump used Twitter prolifically.  *See, e.g.*, Michael D. Shear,

et al., *How Trump Reshaped the Presidency in Over 11,000 Tweets*, The New York Times (Nov.

2, 2019), https://www.nytimes.com/interactive/2019/11/02/us/politics/trump-twitter-

presidency.html ("'He needs to tweet like we need to eat,' Kellyanne Conway, his White House

counselor, said in an interview.").  That continued until the platform permanently suspended

Trump's account, following the Capitol riot, for "violat[ing] the company's policy against

glorification of violence."  *See, e.g.*, Brian Fung, *Twitter bans President Trump permanently*,

CNN (Jan. 9, 2021), https://www.cnn.com/2021/01/08/tech/trump-twitter-ban/index.html.

"Since November 18, 2022, Special Counsel Jack Smith has overseen an ongoing

criminal investigation into potential interference with the peaceful transfer of power following

the 2020 presidential election."  *In re Sealed Case*, --- F.4th ---, 2023 WL 5076091, No. 23-5044

---

[1] *But see, e.g.*, Al-Amyn Sumar, *Prior Restraints and Digital Surveillance: The Constitutionality of Gag Orders Issued Under the Stored Communications Act*, 20 Yale J. L. & Tech 74 (2018).

(D.C. Cir. July 18, 2023).  This investigation has so far led to Trump's indictment on four felony counts, including conspiracy to obstruct the certification of the electoral vote in Congress on January 6, 2021.  *See United States v. Trump*, No. 23-cr-257-TSC (D.D.C.).  On August 9, 2023, the D.C. Circuit partially unsealed an opinion and disclosed that the Special Counsel's investigation included serving a warrant on Twitter, in January 2023, for private messages (known on Twitter as "direct messages") sent from Trump's account, @realDonaldTrump.  *See In re Sealed Case*, 2023 WL 5076091, at *1-2.  The public learned that then-Chief Judge Beryl A. Howell had found Twitter in contempt and sanctioned the company for failing to timely comply with this warrant.  *Id.* at *12-13.  The D.C. Circuit rejected Twitter's argument that an order prohibiting Twitter from disclosing the existence of the warrant to Trump was unconstitutional or violated the Stored Communications Act, and it affirmed the District Court's decision to hold Twitter in contempt and direct it to pay a $350,000 fine.  *Id.* at *13.

The following week, on August 15, 2023, the District Court released approximately 500 additional pages of records from *In re Twitter*.[2]  This release included (1) the warrant with two attachments describing the materials to be searched and seized; (2) the parties' briefing on Twitter's motion to vacate or modify the nondisclosure order prohibiting it from informing Trump about the warrant; (3) transcripts from two hearings on the Government's motion for an order to show cause why Twitter should not be held in contempt for failing to comply with the warrant; and (4) a March 3, 2023 Memorandum Opinion ("Mem. Op.").

In these records, Judge Howell notes that the Government applied for and was issued the warrant "based on an affidavit establishing probable cause to believe [Trump's Twitter account]

---

[2] The court released the records in two sets of documents: one unsealed with redactions, *see* https://www.dcd.uscourts.gov/content/doc-50-1-attachment-documents-unsealed-redactions, the other unsealed without redactions, *see* https://www.dcd.uscourts.gov/content/doc-50-2-attachment-b-documents-unsealed-without-redactions.

contains evidence of criminal activity."  Mem. Op. at 5; *see also* Feb. 7, 2023 Hr'g Tr. at 9:1-4 ("THE COURT:  All right.  Now let's turn to the warrant package. . . .  So the warrant package consisted of an incredibly lengthy affidavit, [and] the warrant itself."); *see also In re Sealed Case*, 2023 WL 5076091 at *2 ("Based on *ex parte* affidavits, the district court found probable cause to search the Twitter account for evidence of criminal offenses.").

Finally, on August 16, the D.C. Circuit issued an order, *sua sponte*, requiring that the parties show cause by August 30, 2023 why the "sealed merits briefs in this case . . . and the audio recording and transcript of the joint session of the oral argument should not be unsealed." Minute Order, *In re Sealed Case*, No. 23-5044 (D.C. Cir. Aug. 16, 2023).  It also ordered the Government to show cause by the same date "why the *ex parte* appellee brief and the audio recording and transcript of the *ex parte* session of the oral argument should not be unsealed."  *Id.* Finally, it reminded counsel of their obligation "to 'promptly notify the Court when it is no longer necessary to maintain the record or portions of the record under seal.'"  *Id.*

The warrant application and Affidavit are the first documents docketed in *In re Twitter*. *See* Mem. Op. at 6 (citing the Government's application and Affidavit in support of its application for a search warrant as "ECF No. 1").  But the District Court did not release those documents with the other records.  Indeed, though only one motion to seal has been released in this matter, and no sealing or unsealing orders were included in the trove of documents released last week, the entire *In re Twitter* docket and an unknown number of filings remain under seal.

## ARGUMENT

The First Amendment and common law rights of access to court records are "a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch."  *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017) (Garland, J.).  Nowhere is the maintenance of integrity and legitimacy more

4

important than in a case like this one, involving the historic and closely-watched investigation of

a former President.  Under the Constitution and the common law, the Court should unseal the

Affidavit, any sealing-related motions and orders, the docket, and any other records, including

any audio recordings relating to these proceedings, filed in or made as a result of *In re Twitter*

for which that Government can no longer show a compelling need to keep secret.

**A.     The Court Should Release The Records Under The Constitutional Right Of Access.**

"The Supreme Court has sketched a two-stage process for resolving whether the First

Amendment affords the public access to a particular judicial record or proceeding."  *Dhiab v.*

*Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring).  "First the court must

determine whether a qualified First Amendment right of public access exists.  If so, then . . . the

record or proceeding may be closed only if closure is essential to preserve higher values and is

narrowly tailored to serve that interest."  *Id.* (cleaned up).

Courts follow the "experience and logic" test to determine where the constitutional right

of access right to records or a proceeding.  *Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 9 (1986).

Under this test, the right of access attaches if "the place and process have historically been open

to the press and general public" and if access "plays a significant positive role in the functioning

of the particular process."  *Id*. at 8.

"[P]ost-investigation warrant materials" such as the Affidavit "have historically been

available to the public" and subject to "an historic common law right of access to judicial records

and documents that has been recognized in United States courts for well over a century."  *In re*

*New York Times Co*., 585 F. Supp. 2d 83, 88 (D.D.C. 2008); *see also In re L.A. Times Commc'ns*

*LLC*, 628 F. Supp. 3d 55, 70 (D.D.C. 2022) (assuming common law and First Amendment rights

of access to search warrant materials aligned, and approving further release of a search warrant

and supporting affidavit).  Likewise, the constitutional right of access plainly attaches to any sealing motions or orders.  *See EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) ("A court's decrees, its judgments, its orders, are the quintessential business of the public's institutions."); *Washington Post v. Robinson*, 935 F.2d 282, 289 (D.C. Cir. 1991) (holding that motions to seal plea agreements must be publicly docketed, and interested parties must be given notice and opportunity to be heard before sealing).

Dockets are also judicial records subject to the public right of access.  *Leopold v. United States*, 964 F.3d 1121, 1129 (D.C. Cir. 2020) ("Although judges do not always rely upon dockets themselves in reaching decisions, dockets are nonetheless judicial records because they are created and kept by courts for the purpose of memorializing or recording matters of legal significance.") (cleaned up).[3]  As the Second Circuit has explained, and D.C. Circuit has agreed, "docket sheets provide a kind of index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004); *see also Leopold*, 964 F.3d at 1129 (quoting same with approval).[4]  The ability of the public and press to understand and

---

[3] *Accord United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993) (dockets are subject to First Amendment right of access); *United States v. Criden*, 675 F.2d 550, 559 (3d Cir. 1982) ("case dockets maintained by the clerk of the district court are public records"); *In re State-Record Co., Inc.*, 917 F.2d 124, 129 (4th Cir. 1990) (reversing order sealing docket entries); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 575 (8th Cir. 1988) (same).

[4] Fifteen years ago, following an investigation led by the Reporters Committee for Freedom of the Press revealing that no public online docket existed for 469 criminal cases in this District over a five-year period, then-Chief Judge Thomas Hogan spearheaded a vote by the U.S. Judicial Conference resulting in recommendations that all federal trial courts list all sealed dockets online.  *See Conference recommends change to secret dockets*, Reporters Comm. for Freedom of the Press (Mar. 13, 2007), https://www.rcfp.org/conference-recommends-change-secret-dockets/. Judge Hogan commented that the Reporters Committee "did a good favor for us in discovering" these secret dockets.  *Id.*

monitor judicial proceedings—a central purpose of the access rights—is "merely theoretical if the information provided by docket sheets were inaccessible." *Id.*

Where this constitutional right of access applies, the Court should make the judicial records public unless secrecy "is essential to preserve higher values and is narrowly tailored to serve that interest." *Dhiab*, 852 F.3d at 1102 (Williams, J., concurring).  After all, "[w]hat transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947). Here, the records from *In re Twitter* released to date contain no argument by the parties or finding by the Court that continued withholding of the Affidavit, the docket, or any other still-sealed records is essential to preserve any higher values.  Nor are there any public findings that narrowly targeted redactions would not sufficiently protect any such interest.  *See In re New York Times Co.*, 585 F. Supp. 2d 83, 91 (D.D.C. 2008) (because restrictions on First Amendment right of access must be narrowly tailored, courts must ask whether "the goal of protecting [higher values] can be accomplished by means less restrictive than prohibiting access . . . altogether").

Indeed, at this point it is difficult to imagine <u>any</u> justification for continued sealing.  The Special Counsel's warrant sought certain communications from Trump, who has already been indicted and arraigned in connection with the Special Counsel's investigation.  The D.C. Circuit has further disclosed to the public the existence of the warrant, what it sought, and how Twitter reacted to receiving it.  *See In re Sealed Case*, 2023 WL 5076091, at *2-4.  Even if the Special Counsel's investigation continues, therefore, the Government cannot credibly assert at this late date that disclosure of these particular records would compromise any aspect of the investigation. *Cf. In re New York Times Co.,* 585 F. Supp. 2d at 93 (government conceded there was no possibility of prejudice where "the investigation is complete and therefore is not in danger of being thwarted if the Court releases the documents"); *see also* Minute Order, *In re Sealed Case,*

No. 23-5044 (D.C. Cir. Aug. 16, 2023) (directing the Government to show cause why briefing and records of oral argument should not be made public, and noting that "[c]ounsel are reminded of their obligation to 'promptly notify the Court when it is no longer necessary to maintain the record or portions of the record under seal.'" (citing D.C. Cir. Rule 47.1(f)(4)).

Nor could any party argue there are cognizable privacy interests of Trump's that justify continued sealing. *In re New York Times Co*., 585 F. Supp. 2d at 91 (public interest in access to warrant materials outweighs the privacy interest of individual who was investigated and not charged, particularly where investigation and its results were already publicly known); *cf. In re L.A. Times Commc'ns LLC*, 628 F. Supp. 3d at 68 (noting "once an investigation closes *without charges*, the subject of the criminal investigation retains significant privacy interests tied to the public disclosure of investigation materials") (emphasis added).  Moreover, to the extent Trump could articulate any privacy interests in information contained in the Affidavit or other sealed judicial records, those interests could and should be satisfied by narrowly targeted redactions. *Id.* at 70 (ordering search warrant and supporting affidavit released with limited redactions "to protect third-party privacy interests").

Because the First Amendment right of access applies to the Affidavit, the docket, and other sealed judicial records, including any related audio, and there are no findings on the public record demonstrating that blanket withholding is essential to preserving any higher values, the Court should promptly grant the Press Coalition's motion for access.

**B.      The Court Should Release The Records Under The Common Law Right Of Access.**

The Court also should release the Affidavit and other sealed judicial records under the common law right of access.  "Although [this] right is not absolute, there is a strong presumption in its favor, which courts must weigh against any competing interests."  *Metlife*, 865 F.3d at 663.

8

Like the constitutional right of access, the common law right requires courts to conduct a two-stage analysis.  First, courts determine whether the records at issue are "judicial records" to which there is a "strong presumption" in favor of access.  *Id.* at 665-69.  If they are judicial records, courts then apply the six-factor test set out in *United States v. Hubbard* to determine whether the presumption of access has been rebutted.  650 F.2d 293, 317-21 (D.C. Cir. 1980).

The Affidavit, sealing-related motions and orders, and other filings on the docket are unquestionably "judicial records" to which the public has a presumptive right of access under the common law.  *See, e.g.*, *In re Los Angeles Times Commc'ns LLC*, 28 F.4th 292, 297 (D.C. Cir. 2022) (search warrant materials that "would have been intended to influence a judicial decision to find probable cause to issue a search warrant" are "classic example[s] of . . . document[s] intended to influence judicial decision-making and . . . therefore . . . judicial record[s]"); *Metlife*, 865 F.3d at 668 (documents that "were filed before the district court's decision and were intended to influence it" are judicial records).

Because the public has a presumptive right of access to the Affidavit and other judicial records in *In re Twitter* under the common law, the Court should release those records unless the party seeking the sealing rebuts the strong presumption under *Hubbard* and *Metlife*.  Neither the parties nor the Court have articulated on the record how these factors could outweigh the "strong presumption" of access to the Affidavit and other sealed records here.  *In re New York Times Co.*, 585 F. Supp. 2d at 94 (ordering the Government to release search warrant materials with limited redactions because "public has made a strong showing of need for the materials, much of the information is already in the public forum, and there is no possibility of prejudice to an investigation or a future defendant").

## CONCLUSION

For the foregoing reasons, the Press Coalition respectfully requests that the Court promptly unseal the Affidavit, any sealing motions or orders, and the docket in *In re Twitter*, as well as any other judicial records submitted in matter for which there is no longer a compelling need for secrecy.

Dated:  August 21, 2023          Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Chad R. Bowman (#484150)
Lauren Russell (#1697195)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
bowmanchad@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of August, 2023, I caused true and correct copies of

the foregoing to be served via electronic mail and U.S. Mail on the following:

James I. Pearce
J.P. Cooney
Raymond N. Hulser
Cecil W. VanDevender
John M Pellettieri
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Room B-206
Washington, DC 20530

Elizabeth J. Shapiro
Leslie Cooper Vigen
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005

*Counsel for the United States*


Ari Holtzblatt
Benjamin Powell
Whitney Russell
Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Ave. NW
Washington, DC 20006

George Varghese
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston MA 02109

*Counsel for Twitter, Inc.*

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)