UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PRESS APPLICATION FOR ACCESS TO JUDICIAL RECORDS IN CASE NO. 23-SC-31, IN THE MATTER OF THE SEARCH OF INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY TWITTER, INC. | Case No. 1:23-mc-00084-JEB |

**TWITTER'S MEMORANDUM PARTIALLY SUPPORTING AND PARTIALLY OPPOSING THE PRESS COALITION'S APPLICATION FOR ACCESS**

X Corp., as successor in interest to Twitter Inc. ("Twitter," for convenience), largely agrees with the Press Coalition that the Court should unseal the records in Case No. 23-sc-31 (D.D.C.), *In the Matter of the Search of Information That Is Stored at Premises Controlled by Twitter, Inc.* ("*In re Twitter*"), including the submissions the government relied on to obtain and sustain the non-disclosure order.  As the Press Coalition's brief explains, both the Constitution and the common law right of access to judicial records support that result.  There is a "strong presumption in … favor" of public access, and the government's "competing interests" in secrecy cannot possibly overcome that presumption now that the target of the investigation has been publicly indicted and arraigned, and has likely obtained in discovery precisely the materials still sealed in *In re Twitter*.  *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017).

Twitter submits this memorandum for two purposes.  First, as a frequent recipient of legal process and non-disclosure orders, Twitter is acutely aware of the importance—both to litigants and the public—of understanding the full basis for *ex parte* judicial decisions concerning such

orders.  That interest justifies unsealing most of the records in *In re Twitter* (as the Press Coalition requests) but applies with special force to certain records that this brief highlights. Specifically, Twitter, other litigants, and the public can only understand the grounds for decisions of the district court and the D.C. Circuit to issue and subsequently uphold a non-disclosure order if the Court unseals the still-redacted portions of the district court's opinions and the government submissions on which the court relied and that sought to influence the court's decisions, including the application and affidavit the government submitted to obtain the non-disclosure order, the government's *ex parte* opposition to Twitter's motion to vacate the order, and the materials submitted in support of that opposition.[1]  Second, although the Press Coalition is correct that almost all the records in *In re Twitter* can and should be made public, the Coalition goes too far in demanding that the name of the account operator associated with the @realDonaldTrump account be released.  Unsealing that information would not provide the public with any greater insight into this dispute or the court's decision-making, and would do significant harm to Twitter users' expectations of privacy.

I.      **The Court Should Unseal The Decision Upholding The Non-disclosure Order And The Submissions On Which That Decision Was Based**

"'The public's right of access to judicial records derives from two independent sources: the common law and the First Amendment.'"  *In re L.A. Times Commc'ns LLC*, 628 F. Supp. 3d 55, 62 (D.D.C. 2022).  Both require unsealing the judicial documents relating to the non-disclosure order.

---

[1] The district court considered the government's simultaneously submitted warrant affidavit to "provide ample reason justifying the NDO."  *See* Memorandum Opinion, *In the Matter of the Search of Information That is Stored at Premises Controlled by Twitter Inc.*, No. 23-sc-31 (D.D.C. Mar. 3, 2023), publicly available at ECF No. 50-1 at 190, https://www.dcd.uscourts.gov/content/doc-50-1-attachment-documents-unsealed-redactions.

### A.      The Common Law Right of Access Requires Unsealing

Under the common law, a "strong presumption" in favor of access attaches to all "judicial records." *Metlife*, 865 F.3d at 663.  In deciding whether that strong presumption can be overcome, courts consider six factors (known as the *Hubbard* factors):  "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings."  *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1131 (D.C. Cir. 2020).

1.  Court opinions are presumptively publicly available because they "are the 'quintessential business of the public's institutions.'"  *In re Leopold*, 964 F.3d at 1128.  That is especially so here.  "The appropriateness of making court files accessible is accentuated in cases where the government is a party:  in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch."  *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987).

There is "no doubt that the court orders" issuing and upholding the non-disclosure order here "are judicial records" subject to the common law right of access.  As a result, a "strong presumption" applies in favor of fully disclosing the district court's opinions here, including the portions currently redacted.  *In re Leopold*, 964 F.3d at 1127.  And the *Hubbard* factors indicate that there are no grounds for overcoming that presumption.  The need for public access is great: "the issuance of public opinions is core 'to the transparency of the court's decisionmaking process.'"  *Id.* at 1128 (quoting *Metlife*, 865 F.3d at 668).  And now that the target of the investigation has been publicly indicted and arraigned (and through those actions, witnesses and

3

subjects have been alerted to how they fit within the investigation and prosecution), it is difficult

to imagine any grounds for continuing to withhold any of the substance of the district court's

decisions.  Indeed, former President Trump may well have already obtained in discovery exactly

the information sought here.  As the government itself has explained, former President Trump

has, at this point, a "detailed understanding of the evidence supporting the charges against him."

*United States v. Trump*, No. 23-cr-00257 (D.D.C. Aug. 10, 2023), ECF No. 23 at 6.  Where so

much is already public, "the Court's analysis must ask whether the release of these particular

[materials] is likely to create a new or heightened risk" to some important interest, "beyond that

which already exists."  *United States v. Munchel*, 567 F. Supp. 3d 9, 19 (D.D.C. 2021).  Between

that demanding showing and the strong presumption in favor of public access, there is little

argument for continued secrecy.

      To the extent the government believes that continued sealing is required to preserve

grand jury secrecy, that argument is likewise unavailing.  The categorical secrecy requirements

of Federal Rule of Criminal Procedure 6(e) do not apply here, regardless whether the

government chose to discuss grand jury matters or materials in pursuing a search warrant.  Those

rules apply only to grand jury proceedings and (in different form) to proceedings "ancillary to

the grand jury's work."  *In re Press Application for Access to Jud. Recs. Ancillary to Certain*

*Grand Jury Proc. Concerning Former President Trump's Commc'ns with his Att'ys*, 2023 WL

5318267, at *3 (D.D.C. Aug. 18, 2023).  The matter here is neither.  It is, of course, not itself a

grand jury proceeding.  Nor is it an "ancillary" proceeding stemming from actions the *grand jury*

took to "summon witnesses and documents."  *In re Motions of Dow Jones & Co.*, 142 F.3d 496,

498 (D.C. Cir. 1998).  This proceeding was instead prompted by the government's decision to

pursue a search warrant.  And "[p]ublic access to warrants *and associated judicial records is*

generally governed by the balancing of factors set out in *United States v. Hubbard*," not by the strictures of Rule 6. *In re New York Times Co.*, 2023 WL 2185826, at *4 (D.D.C. Feb. 23, 2023) (emphasis added). As explained, those factors favor disclosure here. The government cannot elect to rely on materials taken from a grand jury in non-grand-jury proceedings—transforming them into judicial records—and then attempt to avoid the strong presumption of access that attaches to judicial records.

In any event, the public indictment of former President Trump makes the government's reliance on grand jury secrecy untenable. When the government requested that this proceeding be sealed, it said only that its *ex parte* materials "discuss[ed] matters occurring before the grand jury" and "refer[red] to an ongoing grand jury investigation." Government's Motion to Seal and to Authorize Limited Disclosure, *In the Matter of the Search of Information That is Stored at Premises Controlled by Twitter Inc.*, No. 23-sc-31 (D.D.C.), publicly available at ECF No. 50-2 at 1-2, https://www.dcd.uscourts.gov/content/doc-50-2-attachment-b-documents-unsealed-without-redactions. But "[t]here is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers." *Senate of the Commonwealth of Puerto Rico on Behalf of Judiciary Comm. v. United States Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987). "[T]he touchstone is whether disclosure 'would tend to reveal some secret aspect of the grand jury's investigation.'" *Id.* Given that the grand jury has itself announced the matter before it and publicly indicted former President Trump, a mere "reference" to the grand jury's investigation can hardly reveal any secret aspect of that investigation. In the language of Rule 6(e)(2), the "matter occurring before the grand jury" is now public—so the need to keep that matter secret cannot itself justify continued sealing. Unless the government can show that revealing "the specific facts" contained in the still-sealed materials would disclose "a particular grand-jury

secret," continued sealing is unwarranted—even if Rule 6 did apply here.  *In re Press Application*, 2023 WL 5318267, at *5.  And based on the representations the government made to seal *In re Twitter* in the first instance, it is difficult to imagine that it can make such a specific showing.

2.  Litigants and the public also have a powerful interest in accessing all the materials necessary to understand the grounds for judicial decisions.  Here, that principle requires unsealing not only judicial opinions, but also the "applications" and "supporting documents" that were "intended to influence the court" in rendering its decisions, *In re Leopold*, 964 F.3d at 1128:  the application and affidavit submitted to obtain the *ex parte* non-disclosure order and the brief and supporting materials submitted to oppose Twitter's motion to vacate that order.

"The public has an especially strong interest in reviewing documents 'specifically referred to in the trial judge's public decision.'"  *Vanda Pharms., Inc. v. Food & Drug Admin.*, 539 F. Supp. 3d 44, 52-53 (D.D.C. 2021).  But the public's interest extends further than that, because a "brief (or part of a brief) can affect a court's decisionmaking process even if the court's opinion never quotes or cites it."  *Metlife*, 865 F.3d at 667-668.  To "affect the court's decision, after all, is the reason parties file briefs."  *Id.*  Accordingly, a "'strong presumption of public access" applies not just to documents cited in the court's opinions, but to *any* documents "that a litigant submits with the intention that the court will rely on them.'"  *Munchel*, 567 F. Supp. 3d at 20; *see also Cable News Network, Inc. v. FBI*, 984 F.3d 114, 118 (D.C. Cir. 2021) ("If the goal in filing a document is to influence a judge's decisionmaking, the document is a judicial record."); *FTC v. Match Grp., Inc.*, 2023 WL 3181351, at *9 (D.D.C. May 1, 2023) (fact that documents were "submitted with the explicit goal of influencing judicial decision-making[] militates against allowing them to remain sealed").

These principles squarely require unsealing the *ex parte* application and affidavit the government submitted to obtain the non-disclosure order in the first place, the redacted portions of the government's briefs defending the non-disclosure order, and the supporting materials the government submitted with those briefs. Just as "[t]here is no question that" an application for a Stored Communications Act order and its "supporting documents (e.g., accompanying affidavits)" are "judicial records," there can be no question that an application for a non-disclosure order attached to such an order, and the documents supporting that application, are likewise judicial records. *In re N.Y. Times Co.*, 2021 WL 5769444, at *4 (D.D.C. Dec. 6, 2021). And it is equally plain that the government's briefs and supporting materials, which were submitted to ensure the non-disclosure order would be maintained in the face of Twitter's opposition, are likewise judicial records subject to disclosure.

That is made all the clearer by the fact that significant portions of these materials were expressly cited in the district court's and D.C. Circuit's decisions (the D.C. Circuit's opinion, of course, constitutes binding precedent in this circuit). The district court explained that "[t]he NDO was granted based on the government's proffered facts." Memorandum Opinion, *In the Matter of the Search of Information That is Stored at Premises Controlled by Twitter Inc.*, No. 23-sc-31 (D.D.C. Mar. 3, 2023), publicly available at ECF No. 50-1 at 171, https://www.dcd.uscourts.gov/content/doc-50-1-attachment-documents-unsealed-redactions (citing the government's *ex parte* application for a non-disclosure order). And when the district court rejected Twitter's challenge to the non-disclosure order, it emphasized that Twitter was not "privy to … non-public information about the investigation, including the … NDO Application submitted to the Court," and explained that without that information, Twitter was "in *no position* to assess" the gap between the information publicly available and the information in the

application.  Memorandum Opinion, *In the Matter of the Search of Information That is Stored at Premises Controlled by Twitter Inc.*, No. 23-sc-31 (D.D.C. Mar. 3, 2023), publicly available at ECF No. 50-1 at 186, https://www.dcd.uscourts.gov/content/doc-50-1-attachment-documents-unsealed-redactions.  Put differently, the district court was of the view that neither Twitter nor anyone else could understand the informational gap that formed the basis for its decision without the *ex parte* materials the government submitted to obtain the non-disclosure order—exactly what Twitter and the Press Coalition now seek.  The D.C. Circuit affirmed this Court's decision, and in its opinion once again discussed the government's initial application materials.  *In re Sealed Case*, __ F.4th __, 2023 WL 5076091, at *2 (D.C. Cir. July 18, 2023) (noting the government's application for a non-disclosure order).  And both decisions extensively referenced—beneath substantial redactions—the government's *in camera*, *ex parte* presentations in support of continued non-disclosure.  *See* Memorandum Opinion, *In the Matter of the Search of Information That is Stored at Premises Controlled by Twitter Inc.*, No. 23-sc-31 (D.D.C. Mar. 3, 2023), publicly available at ECF No. 50-1 at 188 n.6, https://www.dcd.uscourts.gov/content/doc-50-1-attachment-documents-unsealed-redactions; *In re Sealed Case*, __ F.4th __, 2023 WL 5076091, at *23 n.6.

Unless the application materials, the briefs, and the opinion here are unsealed in full, there will exist a pair of decisions—including a binding D.C. Circuit decision—that are based, in part, on secret facts.  In a matter of this significance to the public, it is of vital civic importance that the public be able to see for itself the grounds for the courts' decisions.  That alone amply justifies disclosure.  But the existence of binding judicial decisions grounded on secret facts is problematic far beyond this one case.  Indeed, such secret law is precisely what the common-law right of access is meant to avoid.  "Reviewing the materials underlying a judge's decision

enables the public to" understand what arguments "need[] to be put forward to" obtain a favorable ruling in future cases. *Vanda Pharms.*, 539 F. Supp. 3d at 52. There is no doubt that Twitter—and other communication providers—will be subject again to non-disclosure orders. Those companies must structure policies for addressing those orders. They must communicate with their users about the governing law. They must confer with the government about the proper scope of such orders. And they must, on occasion, litigate about such orders. Doing all that without the full benefit of the opinion upholding this non-disclosure order and the facts and arguments upon which it was based is to do so without full knowledge of the law. That is starkly at odds with "the antipathy of a democratic country to the notion of 'secret law,' inaccessible to those who are governed by that law." *In re Leopold*, 964 F.3d at 1127.

**B.      The First Amendment Right of Access Also Requires Unsealing**

The Constitution also extends a right of access to court proceedings or documents if "the place and process have historically been open to the press and general public" and if access "plays a significant positive role in the functioning of the particular process." *Press-Enter. Co. v. Superior Ct. of Cal. for Cnty. of Riverside*, 478 U.S. 1, 8 (1986). That test is commonly referred to as the "experience" and "logic" test, referring, respectively, to each of its two prongs. *See, e.g.*, *Center for Nat'l Sec. Studies v. United States Dep't of Justice*, 331 F.3d 918, 934 (D.C. Cir. 2003). And where that test directs that the right of access applies, it may be overcome only if (1) continued sealing "serves a compelling interest; (2) … there is a substantial probability that, in the absence of" such sealing, "this compelling interest would be harmed; and (3) there are no alternatives to" sealing "that would adequately protect the compelling interest." *United States v. Brice*, 649 F.3d 793, 796 (D.C. Cir. 2011).

1. The district court's opinions, including those portions that are still redacted, are subject to the First Amendment right of access. Judicial opinions have "historically been open to

the press and general public," *Press-Enter. Co.*, 478 U.S. at 8, under the common law right of

access discussed above.  *See United States v. Harris*, 204 F. Supp. 3d 10, 14 (D.D.C. 2016)

("historic common law right of access to judicial records" satisfies "experience" prong of First

Amendment right of access test).  And "public access plays a significant positive role in the

functioning of the process" for obtaining non-disclosure orders because, just as with warrant

applications, "openness of judicial processes and documents … demonstrates to the public that

judicial processes are fair and that there is nothing to hide," and provides "a check on the

judiciary because the public can ensure that judges are not merely serving as a rubber stamp for

the police."  *In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records*, 585

F. Supp. 2d 83, 89-90 (D.D.C. 2008); *see also Brown & Williamson Tobacco Corp. v. FTC*, 710

F.2d 1165, 1177-1178 (6th Cir. 1983) ("[T]he American constitutional system … permit[s]

access to information contained in court documents because court records often provide

important, sometimes the only, bases or explanation for a court's decision.…  Without access

… , the public cannot analyze and critique the reasoning of the court.").[2]  For the same reasons

that the common law presumption cannot be overcome in light of the now-public detailed

indictment, *see supra* pp. 3-6, the even-more-demanding test for overcoming the First

Amendment right of access cannot be satisfied here.  *See Doe v. Public Citizen*, 749 F.3d 246,

269 (4th Cir. 2014) ("common-law standard" is "less demanding" than "First Amendment"

standard for access).

---

[2] The importance of ensuring that the public can scrutinize and critique the district court's
reasoning is especially clear here, given that the district court already acknowledged—only after
Twitter's intervention—that its initial decision granting the non-disclosure order erroneously
included the risk of flight as a ground for non-disclosure.  *See* Memorandum Opinion, *In the
Matter of the Search of Information That is Stored at Premises Controlled by Twitter Inc.*, No.
23-sc-31 (D.D.C. Mar. 3, 2023), publicly available at ECF No. 50-1 at 171 n.3, https://
www.dcd.uscourts.gov/content/doc-50-1-attachment-documents-unsealed-redactions.

2.  Just as with the common law right of access, the First Amendment requires unsealing not only the district court's opinions, but also the *ex parte* application and affidavit the government submitted to obtain the non-disclosure order in the first place, the redacted portions of the government's briefs defending the non-disclosure order, and the supporting materials the government submitted with those briefs.  Those documents are of the sort "historically open to the public" because, as already explained, they fall within the well-established common law right of access.  *See supra* pp. 6-9.  They therefore satisfy the "experience" prong of the First Amendment right-of-access test.  And with respect to the "logic" prong of that test, public access to these documents plays a "positive role," *In re Application of N.Y. Times Co.*, 585 F. Supp. 2d at 90, in the non-disclosure order process.  "Without access to the sealed materials, it is impossible to know which parts of those materials persuaded the court and which failed to do so (and why)." *Metlife*, 865 F.3d at 668.  For that reason, "the right of access to documents" filed in connection with judicial proceedings is "'a necessary corollary of'" the right of access to "judicial proceedings that themselves … trigger the right to access." *Public Citizen*, 749 F.3d at 267 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004)).

Without access to all those documents and facts that formed the basis of the courts' decisions to grant and sustain the non-disclosure order, the public will remain in the dark about vital aspects of the courts' reasoning in a matter of great public significance.  And Twitter and other technology companies will, moving forward, have a substantially diminished capacity to craft policies concerning non-disclosure orders, communicate with their users about those orders, confer in an informed manner with the government about those orders, and, when necessary, challenge those orders in court.  Few things could be more damaging to the "functioning of the process" for obtaining and litigating such orders.

**II.    The Court Should Not Unseal The Account Operator Associated With The @RealDonaldTrump Account**

Twitter opposes unsealing the name of the account operator associated with the @realDonaldTrump account, which is neither necessary to understand the law nor prudent to disclose to the public.  Where "the privacy of third parties" would be endangered by unsealing redacted material, and the redactions sought to be maintained are "limited," the Constitution does not require granting public access to the material at issue.  *In re N.Y. Times Co.*, 2021 WL 5769444, at *8.  And likewise, the *Hubbard* factors counsel against disclosure where "a third party's … privacy rights are at issue," and the "public interest in access to [the] materials … is especially small" because those materials "have never been judicially determined to be relevant." *United States v. Hubbard*, 650 F.2d 293, 319 (D.C. Cir. 1980).  Here, disclosure of the account operator would expose non-public information about an individual.  Particularly given the significant public attention on this matter, exposing that information would create significant risk of "public humiliation and degradation" that counsels against disclosure.  *In re Nat'l Broad. Co.*, 653 F.2d 609, 620 (D.C. Cir. 1981).  It would also more generally undermine the expectation of Twitter users—and indeed, users of all online platforms—that information they have designated as private will remain private.  Twitter, like many other communication and social media platforms, maintains a privacy policy assuring users that their data will not be disclosed to the public except in specified, limited circumstances.  *See* X Corp., Privacy Policy §3: Sharing Information, available at https://twitter.com/en/privacy.  And on the other side of the balance, the redactions required to protect this privacy are exceedingly small, and the redacted information is completely irrelevant to any legal issue involved in these proceedings.  Accordingly, the name of the account operator associated with the @realDonaldTrump account should remain sealed.  *See* Hearing Tr., *In the Matter of the Search of Information That is Stored at Premises Controlled by*

*Twitter Inc.*, No. 23-sc-31 (D.D.C. Feb. 9, 2023), publicly available at ECF No. 50-1 at 24,

https://www.dcd.uscourts.gov/content/doc-50-1-attachment-documents-unsealed-redactions.

## CONCLUSION

For the foregoing reasons, the Court should unseal the records in *In re Twitter* with the

limited exception of redactions to protect (a) the identity of Twitter's Senior Counsel who signed

the declaration Twitter submitted to the district court on February 6, 2023, and (b) the name of the

account operator associated with the @realDonaldTrump account.  And, at a minimum, the Court

should unseal all redacted portions of the district court's opinions, as well as the *ex parte*

application and affidavit the government submitted to obtain the non-disclosure order, the redacted

portions of the government's briefs defending the non-disclosure order, and the supporting

materials the government submitted with those briefs.

 Dated: September 5, 2023

                                        Respectfully submitted,


                                        s/ Seth Waxman
                                        Seth Waxman, D.C. Bar 257337
                                        Ari Holtzblatt, D.C. Bar 1009913
                                        Benjamin Powell, D.C. Bar 464823
                                        Whitney Russell, D.C. Bar 987238
                                        WILMER CUTLER PICKERING
                                          HALE AND DORR LLP
                                        2100 Pennsylvania Ave. NW
                                        Washington, DC 20037
                                        Seth.Waxman@wilmerhale.com
                                        Ari.Holtzblatt@wilmerhale.com
                                        Benjamin.Powell@wilmerhale.com
                                        Whitney.Russell@wilmerhale.com
                                        Tel:  (202) 663-6000
                                        Fax:  (202) 663-6363

                                        *Counsel for X Corp., successor in interest to
                                        Twitter, Inc.*

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September 2023, I caused the foregoing to be electronically filed using the Court's CM/ECF system. I also certify that I caused the foregoing to be served by email upon:

James I. Pearce
Assistant Special Counsel
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
(202) 840-7000

s/Seth Waxman
Seth Waxman, D.C. Bar 257337
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20037
Seth.Waxman@wilmerhale.com
Tel: (202) 663-6000
Fax: (202) 663-6363