**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE PRESS APPLICATION FOR ACCESS TO JUDICIAL RECORDS IN CASE NO. 23-SC-31, IN THE MATTER OF THE SEARCH OF INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY TWITTER, INC.** | **Miscellaneous Case No. 23-84 (JEB)** |

**UNITED STATES' RESPONSE TO PRESS APPLICATION
FOR ACCESS TO JUDICIAL RECORDS IN CASE NO. 23-SC-31,
IN THE MATTER OF THE SEARCH OF INFORMATION THAT IS STORED
AT PREMISES CONTROLLED BY TWITTER, INC.**

**INTRODUCTION**

In January 2023, the government obtained, upon a showing of probable cause, a warrant directing the company now known as X Corp.—known then and referred to herein as "Twitter"—to produce records and data related to the Twitter account @realDonaldTrump, and a nondisclosure order prohibiting Twitter from revealing the existence or contents of the warrant. Twitter objected to producing the information and challenged the nondisclosure order. The government subsequently moved for an order to show cause why Twitter should not be held in contempt for failure to comply with the warrant.  After Twitter missed a court-ordered deadline to produce the materials sought, then-Chief Judge Howell denied Twitter's challenge to the nondisclosure order, held Twitter in civil contempt, and issued sanctions against Twitter.  Twitter appealed these rulings to the U.S. Court of Appeals for the D.C. Circuit, which affirmed.

This litigation involved a search warrant associated with an investigation that was at the time pre-indictment (and which remains ongoing).  It was conducted entirely under seal.  Two weeks after the D.C. Circuit issued its decision, the government unsealed an indictment in the underlying investigation, charging former President Donald J. Trump with four felony counts in connection with his alleged attempts to overturn the results of the 2020 presidential election. Following the indictment and with the government's consent, significant amounts of previously sealed information were made public in the Twitter nondisclosure order litigation, including more than 500 pages of materials from the district court proceedings in which there is no longer a compelling interest in continued sealing.

A group of media organizations (the Press Coalition) now seeks access to "all warrant application materials, including the Government's affidavit establishing probable cause," "all sealing-related motions and orders," "the docket listing all filings in the matter," and "all other

judicial records . . . as to which there is no longer a compelling need for secrecy."[1]   App. 2, ECF No. 1.

The government does not object to the release of certain of this information, but maintains that compelling interests require other materials to remain under seal to protect the integrity of the government's ongoing investigation and its investigative sources and methods; to preserve individual privacy interests; and to prevent disclosure of matters occurring before the grand jury. Specifically, the Court should keep entirely under seal (1) the search warrant application, including the accompanying affidavit; (2) the application for a nondisclosure order pursuant to 18 U.S.C. § 2705(b); (3) the portions of the issued search warrant that have not already been publicly disclosed; and (4) the government's *ex parte* opposition to Twitter's motion to vacate or modify, along with the accompanying exhibits.  The government does not oppose the release of the docket or of other filings reflected on the docket that have not yet been made public and are not specified in the list of documents the government opposes releasing to the public.  The narrow redactions to documents the Court already released, however, should remain in place.

## BACKGROUND

### A.  The Search Warrant

As the Court is aware, on November 18, 2022, Special Counsel Jack Smith was appointed to oversee an investigation into attempts to interfere with the lawful certification of the 2020 election results and to disrupt the peaceful transfer of power following the 2020 election. As part of that investigation, on January 17, 2023, the government sought and obtained a search

---

[1] The Press Coalition also seeks "any audio recordings of any hearings."  App. 2.  The government is unaware of any such recordings.  If, however, any such recordings exist for the internal use of court reporters or other court staff, and would not typically be made public, the government opposes their release to the Press Coalition.

warrant for information associated with the Twitter account @realDonaldTrump based on a showing that probable cause existed to search the information for evidence of certain criminal offenses. *See* ECF No. 4 (SEALED), *In re Twitter*, No. 23-sc-31 (D.D.C. Jan. 17, 2023). Along with the warrant, the government sought, and the district court issued, a nondisclosure order prohibiting Twitter from revealing the existence or substance of the warrant for a period of 180 days. *See* ECF No. 3, *In re Twitter* (D.D.C. Jan. 17, 2023). The court issued that order based on its finding that reasonable grounds existed under 18 U.S.C. § 2705(b) to believe that disclosure would "result in destruction of or tampering with evidence, intimidation of potential witnesses, and serious jeopardy to the investigation." *See id.* The warrant as served on Twitter included two attachments—the "Property to be Searched" (Attachment A) and the "Particular Things to be Seized" (Attachment B)—but not the warrant application or lengthy probable cause affidavit. *See* ECF No. 1 (SEALED), *In re Twitter* (D.D.C.) (filed Jan. 17, 2023). Nor was Twitter provided with the application for a nondisclosure order. *See* ECF No. 2 (SEALED), *In re Twitter* (D.D.C.) (filed Jan. 17, 2023).

The search warrant application contains private information concerning the identity of the swearing agent and nonpublic details about the government's investigative methods, including the precise information it sought from the materials Twitter was ordered to produce; specific events and individuals of interest to the investigation; and the government's internal procedures for warrant execution. *See* ECF No. 1 (SEALED), *In re Twitter* (D.D.C.) (filed Jan. 17, 2023). The accompanying probable cause affidavit is lengthy and replete with detailed, sensitive information that remains nonpublic, including:

- Personally identifying information about the swearing government agent;

- Personally identifying information about individuals and entities (in addition to former President Trump) that the government considers relevant to the investigation;

- Information about events that the government considers relevant to the investigation (beyond those described in the indictment); and

- Evidence obtained from search warrant returns, grand jury subpoena returns, voluntary interviews, and grand jury witness testimony—including verbatim transcripts of emails and summaries of interviews with the government.

The affidavit also discusses, as part of its account, public information obtained from court filings, congressional investigations, and press reports. All of this information is interwoven into a broader narrative that establishes why probable cause exists to believe the Twitter account @RealDonaldTrump contained evidence of federal crimes committed by Trump and others. Although a search warrant is not a formal allegation of a crime, the affidavit's narrative, if unsealed, would essentially levy such allegations against not only former President Trump, but also unindicted individuals. The application for a nondisclosure order likewise references nonpublic details about the investigation, including the fact of a grand jury subpoena. *See* ECF No. 2 (SEALED), *In re Twitter* (D.D.C.) (filed Jan. 17, 2023).

The government served Twitter with the warrant on January 19, 2023.

### B. Twitter's Challenge to the Nondisclosure Order

After missing the initial deadline to comply with the warrant, on February 2, 2023, Twitter filed a motion to vacate or modify the nondisclosure order. ECF No. 7, *In re Twitter* (D.D.C.) (filed Feb. 2, 2023). On the same day, the government filed a motion for an order to show cause why Twitter should not be held in contempt for failure to comply with the search warrant. ECF No. 5, *In re Twitter* (D.D.C.) (filed Feb. 2, 2023). Following briefing on the motion to show cause, then-Chief Judge Howell held a hearing on February 7, 2023, in which the Court granted the government's motion, ordered Twitter to comply with the warrant by February 7, 2023 at 5:00 p.m., and ordered that Twitter would be held in contempt and fined for failure to comply.

Minute Order, *In re Twitter* (D.D.C. Feb. 7, 2023).  Upon notice from the government that Twitter had not complied by the deadline, the Court held a second hearing on February 9, 2023.  The parties thereafter completed briefing on Twitter's motion to vacate or modify the nondisclosure order.  As part of this briefing, the government filed an opposition, served on Twitter, and an *ex parte* opposition, explaining in additional detail why the nondisclosure order was necessary and would survive strict scrutiny under the First Amendment.

On March 3, 2023, the Court issued a memorandum opinion and order denying Twitter's motion and directing Twitter to pay sanctions for its failure to comply with the warrant by the court-ordered deadline.  ECF Nos. 29, 30, *In re Twitter* (D.D.C. Mar. 3, 2023).  Twitter then filed a motion for stay pending appeal, which the Court also denied.  ECF No. 39, *In re Twitter* (D.D.C. Mar. 11, 2023).  On appeal, the D.C. Circuit affirmed in a July 18, 2023 opinion.  *See In re Sealed Case*, --- F.4th ----, 2023 WL 5076091 (D.C. Cir. July 18, 2023).

**C.  The Indictment and Materials Already Publicly Released**

Two weeks after the D.C. Circuit decision, on August 1, 2023, an indictment was unsealed charging former President Trump with four felonies arising from his alleged attempts to overturn the results of the 2020 presidential election.  *See* ECF No. 1, *United States v. Trump*, 23-cr-257 (D.D.C.) (filed Aug. 1, 2023).  In announcing the charges against Trump, Special Counsel Smith stated that the "investigation of other individuals continues."  *Special Counsel Jack Smith Delivers Statement*, U.S. Dep't of Justice (Aug. 1, 2023), https://perma.cc/MJ5V-AVJ6.

Following the indictment, a number of documents concerning Twitter's challenge to the nondisclosure order were ordered unsealed.  First, on August 9, 2023, the D.C. Circuit released a minimally redacted version of its opinion, in which only a single footnote remains nonpublic.  *See In re Sealed Case*, 2023 WL 5076091, at *10 n.6.  This Court then ordered the parties to provide

their positions on the unsealing of the opinion and order issued in the district court.  Minute Order, *In re Twitter* (D.D.C. Aug. 10, 2023).  The parties proposed that many of the materials filed in the district court litigation could be made public in their entirety, and that other materials could be made public with targeted redactions.  Accordingly, on August 15, 2023, this Court ordered the public release of more than 500 pages of previously sealed materials from the district court litigation, including: transcripts of both hearings held before the district court; a copy of the warrant issued to Twitter and Attachments A and B to that warrant (redacted only to conceal personally identifying information of law enforcement personnel); briefing on several motions, including the government's motion to show cause, Twitter's motion to vacate or modify the nondisclosure order, Twitter's motion for a stay pending appeal, and the government's motion to seal; then-Chief Judge Howell's memorandum opinions and orders; emails between counsel and chambers containing minute orders and proposed briefing schedules (including a minute order granting Twitter's motion to seal); and various notices filed by the parties regarding sanctions and payment.  *See* ECF No. 50, *In re Twitter* (D.D.C. Aug. 15, 2023).  Many of these documents contain no redactions.  *See* ECF No. 50-2, *In re Twitter*, *available at* https://perma.cc/A6YQ-K5FT (documents without redactions).  The documents that contain limited excisions were redacted to conceal personally identifying information such as names—primarily that of the attorney who served as a declarant for Twitter—and nonpublic information that, if revealed, would harm the government's ongoing investigation.  *See* ECF No. 50-1, *In re Twitter*, *available at* https://perma.cc/4P8K-29T9 (documents with redactions).

On September 15, 2023, the D.C. Circuit ordered unsealed the briefing and the over-400-page Joint Appendix associated with Twitter's appeal, subject to only limited redactions proposed by the parties.  *See* Per Curiam Order, *In re Sealed Case*, No. 23-5044 (D.C. Cir. Sept. 15, 2023).

The now-public Joint Appendix includes many of the same materials already released by this Court, along with the original nondisclosure order.  *See* Joint App'x, *In re Sealed Case*, No. 23-5044 (D.C. Cir.) (filed publicly Sept. 15, 2023).

### D. The Application for Access

On August 21, 2023, the Press Coalition filed an application seeking access to "(1) all warrant application materials, including the Government's affidavit establishing probable cause . . . ; (2) all sealing-related motions and orders; (3) the docket listing all filings in the matter; and (4) all other judicial records, including any audio recordings of any hearings, as to which there is no longer a compelling need for secrecy."  App. 1–2.  The Press Coalition argues the records should be released because, according to it, "[n]either the parties nor the Court have articulated on the record" compelling interests that outweigh the presumption of access under the First Amendment or the common law.  Mem. 7–9.

Twitter filed a response in partial support of the application on September 5, 2023.  Twitter Mem., ECF No. 8.  It first argues that all judicial decisions in the underlying matter should be unsealed, without redactions.  *Id.* at 3–6.  It also argues that materials cited or relied upon in those decisions, including the warrant application and affidavit, should be unsealed to facilitate understanding of "the grounds for the courts' decisions."  *Id.* at 6–9.  Twitter objected to the unsealing of the name of the account operator associated with the @realDonaldTrump account.  *Id.* at 12.  Both the Press Coalition and Twitter agree that the name of the attorney who signed a declaration on behalf of Twitter may remain under seal.  App. 2.

## LEGAL STANDARDS

"The public's right of access to judicial records derives from two independent sources: the common law and the First Amendment." *In re L.A. Times Commc'ns LLC* (*L.A. Times III*), 628 F. Supp. 3d 55, 62 (D.D.C. 2022) (quoting *In re Application of WP Co. LLC*, 201 F. Supp. 3d 109, 117 (D.D.C. 2016). There is no First Amendment or common law right to access records or portions of records that would reveal secret matters occurring before the grand jury. *See In re Motions of Dow Jones & Co.*, 142 F.3d 496, 500–04 (D.C. Cir. 1998); *see also In re Leopold*, 964 F.3d 1121, 1130 (D.C. Cir. 2020) (explaining that Federal Rule of Criminal Procedure 6(e) "expressly directs secrecy as the default position, and thus displaces the common-law right of access"); *In re Press Application for Access to Judicial Records Ancillary to Certain Grand Jury Proceedings*, --- F. Supp. 3d ----, 2023 WL 5318267, at *3 (D.D.C. Aug. 18, 2023) ("Rule 6(e)(6) displaces any First Amendment or common-law right of access to documents in ancillary [grand jury] proceedings . . . .").

### A.  The Common-Law Right of Access

Courts have long recognized a common-law right "to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). That right, however, "is not absolute." *Id.* at 598. It is "broader, but weaker," than the right under the First Amendment, *In re WP Co.*, 201 F. Supp. 3d at 118, and it "may be outweighed by competing interests," *L.A. Times III*, 628 F. Supp. 3d at 63 (quoting *In re Leopold*, 964 F.3d at 1127).

Courts apply a two-step inquiry when determining right of access under the common law. First, courts must decide whether the document sought is a "judicial record." *See In re L.A. Times Commc'ns LLC* (*L.A. Times II*), 28 F. 4th 292, 296–97 (D.C. Cir. 2022). In this Circuit, judicial

records encompass "documents intended 'to influence a judge's decisionmaking'" and include memoranda submitted by the parties and "search warrant materials."[2]  *Id.* (quoting *CNN v. FBI*, 984 F.3d 114, 116, 118 (D.C. Cir. 2021)).

Second, if the materials in question are "judicial records," courts must conduct a balancing test, weighing the government's interests in keeping the record secret against the public's interest in disclosure.  *See id.* at 297.  The D.C. Circuit applies a six-factor test, originated in *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980), to guide the balancing of competing interests under the common law right of access.  *See, e.g.*, *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 666 (D.C. Cir. 2017).  The *Hubbard* test requires district courts to weigh the following factors:

> (1) The need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*In re Leopold*, 964 F.3d at 1131 (quoting *MetLife*, 865 F.3d at 665).  Judge Howell noted that "the third, fourth, and fifth *Hubbard* factors . . . ask variations of the same question: to what extent harm to legitimate interests, including privacy or law enforcement interests, would result from unsealing."  *L.A. Times III*, 628 F. Supp. 3d at 66.

---

[2] The *L.A. Times* litigation involved a search warrant associated with a closed investigation.  *See L.A. Times III*, 628 F. Supp. 3d at 66.  The D.C. Circuit has not squarely held that search warrant materials associated with ongoing investigations constitute "judicial records."  *Compare Times Mirror Co. v. United States*, 873 F.2d 1210, 1221 (9th Cir. 1989) (no common-law right of access to "warrant materials during the pre-indictment stage of an ongoing criminal investigation").  Nevertheless, for the purposes of this response, the government assumes they do.

**B.  The First Amendment Right of Access**

The First Amendment creates a right of public access to criminal trials. *See Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 603–06 (1982).  The right extends to certain other criminal proceedings and records.  *See Press-Enter. Co. v. Superior Ct. of Cal. for Riverside Cnty.*, 478 U.S. 1, 7 (1986).  To determine whether a First Amendment right of access to a particular criminal proceeding exists, courts apply a two-part test: (1) whether the proceeding has "historically been open to the press and the general public"; and (2) whether "public access plays a significant positive role in the functioning of the particular process in question.'"  *Id.* at 8–9.  This is referred to as the "experience and logic" test.  *See id.*; *see also In re Application of New York Times Co.*, 585 F. Supp. 2d 83, 87 (D.D.C. 2008).

The second step of the inquiry calls for a balancing test to determine whether any overriding interests outweigh a finding of presumptive right of access under the first step of the inquiry. Specifically, courts must determine "whether 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest' nonetheless trumps any qualified right of access that attaches."  *Press-Enter. Co.*, 478 U.S. at 9. The government can overcome the presumption of access by showing that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest."  *In re WP Co.*, 201 F. Supp. 3d at 118 (quoting *United States v. Brice*, 649 F.3d 793, 796 (D.C. Cir. 2011)).

**ARGUMENT**

As explained, at this stage, the government does not object to the public release of the docket or of the majority of the filings memorialized on the docket—most of which are already public and subject to, at most, minimal redactions.  Compelling interests, however, require other materials to remain entirely under seal to protect law enforcement interests, including the integrity of the government's ongoing investigation and its confidential sources and methods; to preserve the privacy interests of law enforcement personnel and individuals other than former President Trump who are personally identified in the materials; and to prevent the disclosure of matters occurring before the grand jury.  The materials that require ongoing sealing are: (1) the search warrant application, including the accompanying affidavit, ECF No. 1, *In re Twitter*; (2) the application for a nondisclosure order pursuant to 18 U.S.C. § 2705(b), ECF No. 2, *In re Twitter*; (3) the portions of the issued search warrant that have not already been publicly disclosed, ECF No. 4, *In re Twitter*; and (4) the government's *ex parte* opposition to Twitter's motion to vacate or modify, along with the accompanying exhibits.

**A.  Application of the *Hubbard* Test Requires Ongoing Sealing Under the Common Law.**

Although the common-law right of access applies to the majority of the materials sought here (except to the extent they reveal still-secret matters occurring before the grand jury), compelling governmental interests require that they remain under seal.  Application of the *Hubbard* factors confirms this.

*First*, given the extensive amount of information to which the public is already privy regarding the subpoena issued to Twitter and its challenge to the nondisclosure order, the need for public access to the still-sealed documents at issue here is low.  Although the government does not dispute the significant public interest in the investigation into attempts to overturn the results of

the 2020 election generally, much of that information has been made public in the indictment of former President Trump. The interest in learning *additional nonpublic* information about the ongoing investigation—including still-secret information provided to the government by witnesses or obtained via the grand jury, the identities of witnesses and uncharged individuals, the scope or direction of the continuing investigation, or the government's investigative methods or techniques—is far outweighed by the governmental interest in maintaining the integrity of its continuing investigation and the privacy interests of witnesses and uncharged individuals whose identities would be made public were the requested information to be released. The D.C. Circuit has acknowledged that the need for secrecy remains "heighten[ed]" where an investigation is ongoing, even after an indictment has been issued. *See In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1141 (D.C. Cir. 2006) (holding, following an indictment, that "the special counsel is entitled to conduct his investigation out of the public eye and with the full cooperation of witnesses who have no fear their role in the investigation will lightly be disclosed").

The Press Coalition does not specify any particular basis for the need for public access, other than the "historic and closely watched investigation of a former President." Mem. 5. But the government has recognized the public interest in the investigation and has made information public as the investigation allows. The compelling need to protect still-secret information and individual privacy during an ongoing investigation outweighs the asserted interest in additional disclosures. *See In re WP Co.*, 201 F. Supp. 3d at 130.

Twitter focuses on the need for public access to judicial decisions and documents referenced in those opinions. Twitter Mem. 3, 6. But Twitter ignores that the Court's opinions in this matter are already public, subject to only limited redactions to preserve the integrity of the

ongoing investigation.   The parties' briefs are also public[3]—save the government's *ex parte* opposition, which includes information that, if revealed, would compromise the ongoing investigation and individual privacy interests, including detailed accounts of secret matters that occurred before the grand jury, which are protected from disclosure from Rule 6(e).   In any event, the government has made public the version of its opposition provided to Twitter, which discloses all of the portions of its arguments opposing Twitter's challenge to the nondisclosure order that could be publicly revealed without harming compelling interests.

These facts also undermine Twitter's argument that it and other communications providers need information about "the governing law" of nondisclosure orders in order to craft policies, communicate with users, and negotiate with the government.   *Id.* at 9.   Twitter has all the information it needs to do this, as the law and the bases for the courts' decisions are all public. Twitter fails to explain why it needs access to secret information about this particular investigation (including grand jury information) to create company policy or respond to any future nondisclosure orders.

*Second*, the documents that the government seeks to maintain under seal have not been previously made public.   To be sure, significant amounts of material regarding Twitter's unsuccessful challenge to the nondisclosure order, and the order holding it in contempt and imposing sanction on it, have been released.   This was done with the government's consent, and the government further agrees herein to the release of additional materials related to the litigation that would not compromise the integrity of the investigation or individual privacy interests.   But

---

[3] Seemingly due to an oversight, Twitter's motion for a stay pending appeal, ECF No. 34, *In re Twitter* (D.D.C.) (filed Mar. 7, 2023), and its reply in support of that motion, ECF No. 38, *In re Twitter* (D.D.C.) (filed Mar. 10, 2023), appear to remain entirely under seal.   The government's opposition to that motion and the Court's opinion and order denying it are public.   The government does not oppose the unsealing of Twitter's briefs.

the government has not disclosed the investigative methods or the underlying facts detailed in the search warrant application, the accompanying affidavit, or the *ex parte* opposition.  Nor has it revealed the identities of law enforcement personnel, witnesses, or unindicted individuals referenced extensively in these materials.  Finally, to the extent that the affidavit interweaves into its narrative facts made public elsewhere—such as in the indictment, in unrelated court filings, or in congressional proceedings—that information could not be disclosed here without revealing nonpublic information that would harm the investigative and privacy interests discussed herein.  This is because such information is inextricably intermingled with nonpublic information, which would make any resulting redacted document difficult to comprehend and would allow informed observers to easily guess the contents of the sensitive, sealed information.  *See In re WP Co.*, 201 F. Supp. 3d at 128 (concluding that "due to the degree of media attention already garnered," redaction of search warrant materials was "insufficient to protect the compelling privacy, reputational, and due process interests" at play and that "full closure of the sealed warrant materials" was the "least restrictive means of protecting these compelling interests").  For these reasons, this factor counsels against disclosure.

*Third*, turning to the third, fourth, and fifth *Hubbard* factors, the "harm to legitimate interests, including privacy [and] law enforcement interests" that "would result from unsealing" weighs heavily against disclosure.  *See L.A. Times III*, 628 F. Supp. 3d at 66.  The government has objected to disclosure of the materials at issue; compelling investigative and individual privacy interests support the continued sealing of these materials; and the government's ongoing investigation, future investigations, and the law enforcement personnel, witnesses, and unindicted individuals whose privacy interests were compromised by unsealing would be severely prejudiced.  These well-recognized governmental interests are sufficient to overcome the public interest in

disclosure, even in high-profile cases.  *See L.A. Times III*, 628 F. Supp. 3d at 67; *In re WP Co.*, 201 F. Supp. 3d at 130.

The search warrant materials that remain sealed, including the affidavit; the nondisclosure application; and the government's *ex parte* opposition, including the exhibits, all contain specific, nonpublic information that, if revealed, would harm the government's ongoing investigation and reveal investigative sources and methods in such a manner that could harm future investigations. Courts in this District have found these to be compelling interests that preclude disclosure.  *See L.A. Times III*, 628 F. Supp. 3d at  67 (finding preserving "the confidentiality of the government's investigative techniques" and the government's "ability to secure cooperation from witnesses in the future" to be compelling interests); *In re WP Co.*, 201 F. Supp. 3d at 127–28 ("ensuring that investigators are able [to] obtain information and assistance from individuals with direct knowledge of criminal conduct is critical to law enforcement efforts and the government's compelling interest in protecting the public"); *see also United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983) (recognizing, in the grand jury context, that absent secrecy, "prospective witnesses would be hesitant to come forward voluntarily" (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218–19 (1979))); *Smith v. Lanier*, 726 F.3d 166, 167 (D.C. Cir. 2013) (acknowledging that the government may generally "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law" (quoting *Roviaro v. United States*, 353 U.S. 53, 59 (1957))).  The government also has an obligation pursuant to Federal Rule of Criminal Procedure 6(e) to keep investigative information that would reveal secret matters occurring before the grand jury secret; the common law right of access does not apply to such information.[4]  *See Dow Jones*, 142 F.3d at 500–04.

---

[4] To the extent Twitter asserts that grand jury secrecy obligations do not apply here, that is

Unsealing would also harm the privacy interests of law enforcement personnel, witnesses, and unindicted individuals.  Courts have recognized that revelation of information provided by "third-party witnesses whose role in the investigation is not publicly known" may "compromise . . . those third-party witnesses' reputations and livelihoods."  *See L.A. Times III*, 628 F. Supp. 3d at 67.  Moreover, as a court in the Southern District of Florida noted in connection with efforts to unseal a search warrant associated with a separate investigation of former President Trump, the release of information that might allow law enforcement personnel or witnesses to be identified "could lead to them being harassed and intimidated."  *In re Sealed Search Warrant*, 622 F. Supp. 3d 1257, 1263 (S.D. Fla. 2022).  Additional acute concerns exist with respect to individuals who search warrant materials may indicate are a subject or target of an investigation, but who have not been charged with a crime.  This "carries a stigma that implicates an individual's reputational interest."  *See In re WP Co.*, 201 F. Supp. at 122.  Such unindicted individuals are also harmed by effectively "being accused of a crime without being provided a forum in which to refute the government's accusations."  *Id.*  These "substantial privacy and reputational interests" counsel heavily in favor of continued sealing.  *See id.* at 123.

Nor could individual privacy interests be preserved simply by redacting names and other specific identifying information. Discussion of the information such individuals provided and the events they participated in or observed would be sufficient for sophisticated readers—like the Press Coalition and its clients—to easily discern their identities.  *See In re Sealed Search Warrant*, 622 F. Supp. 3d at 1263 ("Given the public notoriety and controversy about this search, it is likely that even witnesses who were not expressly named in the Affidavit would be quickly and broadly

---

incorrect.  *Contra* Twitter Mem. 4–5.  Disclosure of the materials at issue would reveal "particular grand-jury secret[s]" that remain nonpublic.  *See In re Press Application*, 2023 WL 5318267, at *5.

identified over social media and other communication channels . . . .").  All of these compelling

interests require the materials at issue to remain under seal.

    *Finally*, turning to the sixth *Hubbard* factor, although the materials at issue here were

"considered as part of judicial decisionmaking," "the compelling privacy and law enforcement

interests at stake for third parties and law enforcement techniques and processes" favor continued

sealing.  *L.A. Times III*, 628 F. Supp. 3d at 69.

    For all of these reasons, balancing the relevant factors requires the continued sealing of the

materials the government has identified.

**B.  If the First Amendment Were To Apply, Continued Sealing Would Be Proper.**

    The First Amendment analysis does not alter the conclusion that the materials at issue here

must remain sealed.  At the outset, it is unclear whether the First Amendment would apply to

certain of the requested materials—namely, the search warrant application and the application for

a nondisclosure order.  The D.C. Circuit has not decided whether search warrant materials are

subject to the First Amendment right of access, particularly those related to an investigation that

remains ongoing.  *See L.A. Times III*, 628 F. Supp. 3d at 70 ("The D.C. Circuit has had no occasion

to decide whether there is a First Amendment right of public access to search warrant materials in

matters that did not culminate in criminal charges."); *In re N.Y. Times*, 585 F. Supp. 2d at 88

(similar).  Three other Circuits have held that no First Amendment right of access to search warrant

materials exists, at least pre-indictment.  *See In re Search of Fair Finance*, 692 F.3d 424, 432–33

(6th Cir. 2012); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64–65 (4th Cir. 1989); *Times Mirror

Co. v. United States*, 873 F.2d 1210, 1213–15 (9th Cir. 1989).  *But see In re Search Warrant for

Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988) (holding that a First

Amendment right of access existed, but denying motion to unseal based on compelling interests in

17

ongoing sealing).  And although courts within this District have found a First Amendment right of access existed for search warrant materials associated with closed investigations in specific circumstances, *see, e.g.*, *In re N.Y. Times*, 585 F. Supp. 2d at 88, none has ruled upon the application of the First Amendment to search warrant materials associated with an open investigation—either before or after an indictment issued.[5]  Indeed, the better view is that no First Amendment right to access warrant materials exists because there is no tradition of public access to *ex parte* warrant proceedings—particularly where an investigation is ongoing.  *See In re Fair Finance*, 692 F.3d at 429–33; *Baltimore Sun*, 886 F.2d at 64; *Times Mirror*, 873 F.2d at 1212–18.

That said, there is no cause for the Court to reach this issue here.  The same compelling investigative and individual privacy interests the government identified to support continued sealing under the common law would require the materials at issue to remain under seal even if the First Amendment did apply.  *See L.A. Times III*, 628 F. Supp. 3d at 70; *In re WP Co.*, 201 F. Supp. 3d at 128.

The investigation and the prosecution of former President Trump are ongoing.  There may come a time when further unsealing is warranted.  Respectfully, that time is not now.

## CONCLUSION

For the foregoing reasons, the Court should order the following materials to remain entirely under seal at this time: (1) the search warrant application, including the accompanying affidavit, ECF No. 1, *In re Twitter*; (2) the application for a nondisclosure order pursuant to 18 U.S.C. § 2705(b), ECF No. 2, *In re Twitter*; (3) the portions of the issued search warrant that have not already been publicly disclosed, ECF No. 4, *In re Twitter*; and (4) the government's *ex parte*

---

[5] Moreover, as explained, the First Amendment does not apply to any portions of materials that would reveal secret matters occurring before a grand jury.  *See Dow Jones*, 142 F.3d at 500–04.

opposition to Twitter's motion to vacate or modify, along with the accompanying exhibits.  The

Court should also maintain the current, minimal redactions to the materials publicly released as a

result of its Order of August 15, 2023.  *See* ECF No. 50, *In re Twitter*.  The government does not

oppose the unsealing of the docket sheet or other materials reflected on the docket that are not

already public, and as to which the government has not specifically requested ongoing sealing.

Dated:  September 27, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division, Federal Programs Branch

*/s/ Leslie Cooper Vigen*
LESLIE COOPER VIGEN
Senior Trial Counsel (DC Bar No. 1019782)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel:  (202) 305-0727
Fax:  (202) 616-8470
Email:  leslie.vigen@usdoj.gov

*Counsel for the United States*