# EXHIBIT B

```
              UNITED STATES COURT OF APPEALS
            FOR THE DISTRICT OF COLUMBIA CIRCUIT


- - - - - - - - - - - - - - - -X
                                :
                                :
IN RE: SEALED CASE              :    No. 23-5044
                                :
                                :
- - - - - - - - - - - - - - - -X
                                     Friday, May 19, 2023

                                     Washington, D.C.


     The above-entitled matter came on for oral
argument pursuant to notice.

     BEFORE:

          CIRCUIT JUDGES PILLARD, CHILDS, AND PAN

     APPEARANCES:


          ON BEHALF OF THE APPELLEE:

          JAMES I. PEARCE, ESQ.
```

**eScribers, LLC**

7227 North 16th Street, Suite #207
Phoenix, AZ 85020
Tel: (800) 257-0885
www.escribers.net

P R O C E E D I N G S

1
2  THE CLERK: This Honorable Court is again in
3  session.
4  JUDGE PILLARD: So I just quickly wanted to ask
5  you, you know, the concern -- I think one concern is really
6  with the level of specificity and support for the
7  Government's position that disclosure would jeopardize the
8  integrity of the investigation, and you know, as you heard
9  in the questioning, if that's kind of generally an interest
10 that courts accept without case-specific support, then it
11 really is a different animal. It's hard to see that
12 interest as compelling in contrast to a case like this,
13 where I understand -- and we have read the submission that
14 the Government has made -- where there's more concrete
15 support for the idea that a nondisclosure order is needed,
16 but I just wanted to hear from you in succinct and concrete
17 terms what the case is -- was, at the time that it was
18 sought, for a nondisclosure order in this case.
19 MR. PEARCE: So consistent with our, I think in
20 the, well, not public, but sealed non-ex parte session, I
21 think the core of the Government's concern, reflected in the
22 district court's ruling, was -- is and was the former
23 President's obstructive tendencies with respect to this
24
25

**eScribers, LLC**
7227 North 16th Street, Suite #207
Phoenix, AZ 85020
Tel: (800) 257-0885
www.escribers.net

1  investigation and, frankly, not only this investigation, by
2  which I mean the investigation focused on the events of
3  January 6 and any connection to it, but as well, the other
4  investigation that is part of the special counsel's
5  appointment, which is the investigation into matters at
6  Mar-a-Lago.
7  　　　　　As this Court will know from having --
8  　　　　　JUDGE PILLARD:  You're talking about the
9  classified documents?
10 　　　　　MR. PEARCE:  The classified documents aspect of
11 it, and as this Court will know from review of, you know,
12 our ex parte filing as well as the district court's opinion,
13 the parts that were redacted for Twitter, you know, not only
14 were the -- well, I think the clearest example, the most
15 recent example of the former President's obstructive acts
16 and conduct with respect to the investigation came through
17 in Mar-a-Lago.  Right?  A subpoena is issued on May 11th
18 after a long back-and-forth about return of potentially
19 classified documents.  There's the effort -- and this is all
20 going to -- I'm just kind of, in capsule form, reflecting
21 what's in the record -- you know, the Government goes and
22 has a meeting following a search, is alleged to believe that
23 -- and certainly, there's a certification that suggests --
24
25

1                JUDGE PILLARD:  The Government meeting with the --

2                MR. PEARCE:  The attorney for the former

3    President, an attorney by the name of ████████.

4    There's a certification that accompanies a handover of, I

5    think it's 38 documents, a certification suggesting we've

6    done an extensive search and this is kind of a complete

7    production of what is here.

8                The Government's investigation continues and

9    finds, well, you know, probable cause-level information to

10   suggest that in fact the former President, acting with

11   others, has been moving boxes around and is likely to

12   continue to be holding classified information.  A search is

13   then -- a search warrant is secured on August 5th of last

14   year and executed on August 8th, and lo and behold, there

15   are over a hundred additional classified documents that are,

16   that are found -- again, suggesting that kind of obstructive

17   approach to an investigation.

18               But it doesn't end there insofar as our concerns,

19   the Government's concerns about the former President's

20   obstructive tendencies, which is, you know, shortly after

21   the publicization of that, of that warrant -- and that was

22   going to be -- you know, it was publicized by the President,

23   former President himself; as a physical search, it's not

24
25

**eScribers, LLC**
7227 North 16th Street, Suite #207
Phoenix, AZ 85020
Tel: (800) 257-0885
www.escribers.net

1  something that's going to be kept secret -- there is
2  ███████████████████████████████ that ensues.  There is --
3              JUDGE PILLARD:  Not by the President.  He
4  publicizes it.  Other people act violently toward the
5  Bureau.
6              MR. PEARCE:  That is, that is correct with one
7  caveat which is that not by the former President himself,
8  but -- again, this is in our ex parte -- ████████████
9  ████████████████████████████████████████████████████████
10 █████████████████████  Now, it is true that it is not the
11 former President himself, but the bottom-line concern is
12 intimidation of witnesses, spoliation of evidence, and
13 jeopardizing of an investigation, and if the former
14 President, you know, through -- is sort of drumming up
15 supporters, has the effect of, again, potentially
16 intimidating witnesses or spoliating evidence, that's the
17 core concern that we are --
18             JUDGE PILLARD:  Do we not have to evaluate those
19 events pretty carefully under kind of a Brandenburg or, you
20 know -- standard, in terms of attributing things to the
21 former President?
22             MR. PEARCE:  No, I don't think so.  I mean, if I
23 was standing here or if the Government were seeking to
24
25

1  impose criminal liability on the President for this, then
2  absolutely, the Court would need to apply the kind of
3  <u>Brandenburg</u> incitement, you know, is it likely to result in
4  lawlessness, imminent lawlessness, right, but this is a
5  different type of inquiry.  This is -- under 2705(b) it is
6  reasons to believe that one of the statutory harms will
7  result.  Right?  That's a different question than the
8  <u>Brandenburg</u> question.
9           JUDGE PAN:  So, in other words, the statute
10 doesn't require that the enumerated harms are caused
11 specifically by the target of the investigation.  The
12 statute speaks more generally about jeopardizing the
13 investigation regardless of what the mechanism is.
14          MR. PEARCE:  That's correct and fully sensible,
15 right?  I mean --
16          JUDGE PAN:  Yes.
17          MR. PEARCE:  -- the point of a nondisclosure order
18 is protecting -- I mean, I use the catchall phrase -- the
19 integrity of the investigation, which I think the enumerated
20 factors under 2705(b) by and large reflect.  You know, if
21 somebody is fleeing the jurisdiction or destroying evidence
22 or intimidating witnesses, all of those are going to have a
23 negative consequence on the investigation itself, and so
24
25

eScribers, LLC
7227 North 16th Street, Suite #207
Phoenix, AZ 85020
Tel: (800) 257-0885
www.escribers.net

1  yes, it -- certainly, I'm not aware of anything, any cases
2  that say it's only got to be the target that would cause the
3  statutory harms as opposed to alerting the target, giving
4  rise to the statutory harms.
5             JUDGE PILLARD:  Is it -- I should know the answer
6  to this, but I don't -- is it illegal, unethical, or
7  otherwise impermissible to pay former or current employees
8  legal fees when they incur legal expenses in relation to
9  work that they've done or, you know --
10            MR. PEARCE:  So I'm not aware of it necessarily
11 being per se unlawful.  I do think, though, there are
12 concerns -- there may be some ethical concerns -- I don't
13 have a provision to cite to the Court -- but I certainly
14 think there is the concern about bias or otherwise coloring
15 or shading a potential witness's testimony, and again,
16 perhaps related to our colloquy in -- with Brandenburg, the
17 statute doesn't say we need to show some sort of
18 independently -- actually, an argument that I think I had
19 before this Court last week -- some sort of independently
20 unlawful conduct.  It's just reason to believe that the
21 effect will be one of the statutory harms.
22            JUDGE PILLARD:  Right, but I'm talking less about
23 the statute than about the First Amendment issue, and so --
24
25

1  and I guess you're saying, well, if the statute is met, then
2  that's a compelling interest.
3          MR. PEARCE:  Yes, I think that's right.  I mean,
4  if I'm hearing the question correctly, I suppose it's a --
5  sort of a different First Amendment.  Whether someone has a
6  First Amendment right to pay for someone else's attorneys,
7  I'm not really --
8          JUDGE PILLARD:  Not so much that that's a First
9  Amendment right but that if -- I mean, the other side of it
10 is, we all know that it's -- one does not pay princely sums
11 to be in government service, and if one of the things that
12 happens, if you're in government service in, you know, a
13 very position that's going to generate controversies, you
14 may end up with big legal fees and you're going to have to
15 pay that out of your pocket, you know.  So there is a
16 question about -- I mean, the Government represents its
17 employees in Westfall Act cases and Bivens cases, and so
18 there's -- and I guess I'm probing for, you know, the
19 Government's way of distinguishing those kinds of
20 situations.
21         MR. PEARCE:  So I suppose I don't have a way to
22 distinguish so much as to say, you know, sort of built in to
23 that question is the legal mechanism that, you know --
24
25

1  Bivens and other ways in which the Government pays for
2  attorneys is when that's being carried out in, you know, in
3  the service of the government.  Here, right, the payments
4  are -- certainly, the inference that one can draw is that
5  these are payments that are designed to keep somebody from
6  participating with the ongoing investigation.  I'm not
7  saying that's the only inference that one can draw, but I
8  think that's a perfectly permissible inference from which --
9  that one could draw from this.
10          I'd also just like to make the point -- I'd be
11 remiss if I didn't -- which is that, you know, this was a
12 warrant with respect to Twitter and, you know, although
13 there's not evidence that the former President is actively
14 using Twitter now, you know, he does use a different social
15 media platform, and so the potential for spoliation with
16 respect to that -- in other words, alerting him that there
17 was a warrant as to Social Media Company X would have a high
18 likelihood of having the former President take actions with
19 respect to Social Media Company Y that he is now actively
20 using, you know, including destroying messages, et cetera.
21          JUDGE PILLARD:  And I assume the investigative
22 team has now seen the results of the return, although there
23 was some delay because ▓▓▓▓▓▓▓▓▓▓ --
24
25

1          MR. PEARCE:  That's correct.

2          JUDGE PILLARD:  -- ▮▮▮▮  And do you have a
3  position as to whether, as Mr. Holtzblatt suggested, the
4  contents of that in any way changes the assessment whether a
5  nondisclosure is required?

6          MR. PEARCE:  I would say no.  It's fairly neutral,
7  insofar as we stand by our view that the disclosure on the
8  back of the warrant would have the risks, but I can say to
9  the Court, there are -- and this is relevant to a slightly
10 different issue -- but of the direct messages, ▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  I say that in part
13 because one of the ex ante risks would have been he was
14 directly messaging with individuals who then would take
15 steps to spoliate evidence or with whom, you know, he might
16 follow up to intimidate. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮ -- also has relevance, of course, for the
18 executive privilege issue, but that's not the point of this
19 session.

20         JUDGE PILLARD:  Right.  And then --

21         JUDGE CHILDS:  And Twitter suggests that there
22 were several issues with respect to a public investigation
23 and that a lot of this information is already known.  So can

24
25

1  you narrow us in as to why this is so important, you know,
2  aside from the harms, about what is so different with
3  respect to this investigation as to what is publicly known?
4       MR. PEARCE:  So one is the point I already made
5  with respect to I -- I am not aware of there being any
6  information about a warrant that was sent to -- that
7  reflected the former President's communications, and that
8  could have obstructive implications for, as I mentioned, any
9  of the other communication and, particularly, social media
10 communication that the former President undertakes.
11      I think it was actually part of our sealed
12 colloquy:  I'm not aware of any public information about
13 searches that have been executed through Twitter on any of
14 the President's immediate family or kind of close
15 associates.  So this would be qualitatively new information
16 in that respect.
17      And then, finally, maybe just to emphasize the
18 point again -- yes, of course there is some amount of this
19 that is public, but the former President's obstructive
20 tendencies don't seem to turn on whether something is public
21 or not public, and the particular fallout following
22 Mar-a-Lago, which of course was very public, is something of
23 grave concern to us, in other words, potentially giving rise
24
25

1  to violence.  You know, a lot would turn on precisely -- you
2  know, certainly we would have grave concern if the former
3  President were to get the name of the lead case agent, the
4  issuing judge.  All of these things would have, you know,
5  significant source of (indiscernible).
6      JUDGE PILLARD:  I'm -- I find myself hesitating
7  when you refer to the former President's obstructive
8  tendencies, because obstruction obviously is a crime and I
9  think some of what you're referring to is his political,
10 very public divisiveness, his manipulativeness, his ability
11 to drum up very strong feelings, and I think it's -- I mean,
12 I just want to make sure that you're using that word
13 rigorously and limiting it to what -- the instances of
14 obstruction that you point to.
15     MR. PEARCE:  Point very well taken.  What we are
16 concerned about are things like, this is the Department of
17 -- you know, weaponizing the Department of Justice and
18 things that are designed to try to attack the investigation
19 or get others to do that.  You know, we certainly take no
20 position whatsoever on the former President's views on
21 matters of politics or what could be characterized as
22 publicly, really divisive statements.  That is, that is
23 entirely irrelevant for purposes of determining what would
24
25

1   potentially affect the investigation or, again, the
2   integrity of the investigation.
3           JUDGE PILLARD:  Oh, I have one last question which
4   is about the ████████.  I -- when I was reading the
5   transcript in the district court, ████████████
6   ████████████████████████████████████████████████████
7   ██████████████████████████████████████████████
8   ████████████████████████████████████████████████████
9   ████████████████████████████████████████████████████
10  ██████████████████████████████████████████████████
11  ████████████████████████████████████████████████
12  ██████████████████████████████████████████████████████
13  ████████████████████████████████████████████████████
14  ██████████████████████████████████
15          ████████████████████████████████████████████
16  ██████████████████████████████████████████████████
17  ████████████████████████████████████████████████████
18  ████████████████████████
19          MR. PEARCE:  Let me see if I can address each of
20  those.  My effort, when I referred to it earlier, was to
21  refer to it more generally.  ████████████████████████
22  ████████████████████████████████████████████████████
23  ██████████████████████████████████████████████
24
25

```
 1  ████████████████████████████████████████
 2  ████████████████████████████████████████
 3  ████████████████████
 4              ████████████████████████████
 5  ████████████████████████████████
 6  which, you know, is relevant to some of the things my friend
 7  on the other side, but we're not going to -- you know, just
 8  giving information here.
 9            In terms of executive privilege, ██████████
10  ██████████████████████ but as the Court may know, ██
11  ████████████████████████████████████████
12  ██████████████████████████████████
13  ████████████████████████████████████████
14  ████████████████████████████████████
15  ██████████████████████████████████
16  ████████████████████████████████████
17  ████████████████████████████████████
18  ██████████████████████████.
19            So that's just a long way of saying, ██████
20  ████████████████████████████████ we have, where we
21  have seen the potential for colorable privilege claims or,
22  in fact, you know, ████████████████████████████
23  ████████████████████████████████████████
24
25
```

**eScribers, LLC**
7227 North 16th Street, Suite #207
Phoenix, AZ 85020
Tel: (800) 257-0885
www.escribers.net

```
 1   ████████████████████████████████████████████████████
 2   ████
 3              JUDGE PILLARD:  Although here I take it your
 4   position is that none of this could be; this is
 5   categorically out of bounds for executive privilege because
 6   it's the executive branch asking the former President for
 7   materials and it's within the executive?
 8              MR. PEARCE:  That's our top-level position.  We
 9   also think, as now the warrant has borne out, that the fact
10   that -- well, first of all, ████████████████████
11   ██████████████████████████████████, ██████████████
12   ████  the likelihood that he was using it with someone in the
13   executive branch is exceedingly unlikely.  So -- but yes,
14   the top-line position is, you know, you can't make an
15   executive branch claim against the very executive branch in
16   which you are --
17              JUDGE PAN:  Wait.  But you're ████████████████
18   ████████████████████████████████████████ so there's
19   no executive privilege issue.
20              MR. PEARCE:  That is my understanding of --
21              JUDGE PAN:  Right.
22              MR. PEARCE:  -- the state of the warrant, yes.
23              JUDGE PAN:  Thank you.
24
25
```

**eScribers, LLC**
7227 North 16th Street, Suite #207
Phoenix, AZ 85020
Tel: (800) 257-0885
www.escribers.net

1        JUDGE PILLARD:  No questions from anyone else?
2   Anything else you'd like to add?
3        MR. PEARCE:  No, I think that's it.
4        JUDGE PILLARD:  Great.
5        MR. PEARCE:  Thank you very much.
6        JUDGE PILLARD:  Thank you.
7        (Whereupon, the proceedings were concluded.)

eScribers, LLC
7227 North 16th Street, Suite #207
Phoenix, AZ 85020
Tel: (800) 257-0885
www.escribers.net