UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PRESS APPLICATION FOR ACCESS TO JUDICIAL RECORDS IN CASE NO. 23-SC-31, IN THE MATTER OF THE SEARCH OF INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY TWITTER, INC. | Misc. No. 23-84 (JEB) |

**MEMORANDUM OPINION**

As part of the Special Counsel's investigation into election interference, the Government sought and obtained a search warrant for Twitter's records associated with the @realDonaldTrump account. After the investigation yielded an indictment of former President Trump, a Press Coalition and Twitter sought to unseal documents associated with the warrant. Since then, large swaths of these proceedings have been unsealed with the Government's consent, though several documents remain under lock and key. The Court now concludes that further disclosure is not warranted and will thus deny what remains of the Press Application.

**I.   Background**

In November 2022, Attorney General Merrick B. Garland appointed Jack Smith as Special Counsel to investigate, in part, "whether any person or entity unlawfully interfered with the transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021." See Dep't of Justice, Appointment of Special Counsel (Nov. 18, 2022), https://perma.cc/G5K2-ZN7T. That appointment led to a grand-jury investigation, which in turn resulted in an indictment. United States v. Trump, No. 23-257, ECF No. 1 (D.D.C. Aug. 1, 2023) (Indictment).

1

A. Search-Warrant Application

In the course of his investigation into election interference, the Special Counsel sought a search warrant directing Twitter to produce data and records related to the @realDonaldTrump account. In re Twitter, No. 23-31, ECF No. 1 (D.D.C. Jan. 17, 2023) (Warrant Application). That application was supported by a law-enforcement affidavit intended to establish probable cause for the search. Id. (Affidavit). Alongside the Warrant Application, the Government requested a nondisclosure order pursuant to 18 U.S.C. § 2705(b), to prohibit Twitter from revealing the contents or existence of the warrant to another party. Id., ECF No. 2 (NDO Application). Then-Chief Judge Beryl A. Howell granted both requests. Id., ECF Nos. 3 (NDO), 4 (Warrant). The Government also successfully moved to seal the search-warrant docket. Id. ECF No. 6 (Mot. to Seal); Minute Order of Feb. 2, 2023 (granting motion).

None too pleased with its obligations under the Warrant and the NDO, Twitter moved to vacate the NDO on First Amendment grounds and to stay its obligation to comply with the Warrant; when Judge Howell denied its requests, Twitter appealed. Id., ECF Nos. 7 (Mot. to Vacate and Stay), 29 (Order Denying Vacatur and Stay), 30 (Accompanying Op.), 33 (Notice of Appeal). The D.C. Circuit was unpersuaded by the company's contentions that "the nondisclosure order [was] a content-based prior restraint on speech" and that "declining to stay the enforcement of the warrant pending . . . adjudication of Twitter's First Amendment challenge . . . contradicted the Supreme Court's mandated safeguards in First Amendment cases." In re Sealed Case, 77 F.4th 815, 829, 832 (D.C. Cir. 2023). It thus affirmed the denial of Twitter's motion to vacate and stay in an opinion that was initially sealed. Id. at 836.

B.  Unsealing Prior to Suit

Before the Press Coalition even filed this Application, much of the docket comprising the proceedings had already been unsealed in full or in part, and some of the information in the still-sealed documents has otherwise been made public by the Government.  To start, on August 1, 2023, Trump was indicted on four felonies related to his alleged attempts to overturn the results of the 2020 presidential election.  See Indictment at 1.  The week after the Indictment became public, the D.C. Circuit unsealed its opinion affirming the denial of Twitter's motion to vacate with redactions confined to a single footnote.  See In re Sealed Case, 77 F.4th 815 (decided July 18, 2023; reissued August 9, 2023); id. at 831 n.6.  This Court then *sua sponte* ordered briefing on whether Judge Howell's affirmed Opinion and Order should remain sealed.  In re Twitter, Minute Order of Aug. 10, 2023.  Pursuant to the Government and Twitter's joint response to that Order, id., ECF No. 49 (Joint Status Report), this Court unsealed 509 pages of materials from the district-court litigation, including briefing, orders, and opinions; 303 pages were unredacted and 206 contained minor redactions.  Id., ECF Nos. 50-1, 50-2.

C.  Press Application

That first wave of unsealing did not satisfy the Press Coalition.  On August 21, 2023, it thus filed the present Application seeking access to "all warrant application materials, . . . all sealing-related motions and orders," the search-warrant docket sheet, and any other judicial records "as to which there is no longer a compelling need for secrecy."  ECF No. 1 (App.) at 1–2.  Twitter joined as an interested party and filed a Response that largely echoed the Press's position.  See ECF No. 8 (Twitter Resp.) at 2.  In its Opposition, the Government agreed to further unsealing, see ECF No. 15 (Gov't Resp.) at 2, which prompted the Court to enter an Order making public the docket sheet and most of the entries thereon.  See ECF No. 19.

3

With that act of unsealing, the documents still at issue in this Application were finally crystalized: 1) the Warrant Application; 2) the Warrant Application's lengthy supporting Affidavit; 3) the Warrant that issued, which is nearly identical to the Application; 4) the NDO Application; and 5) the Government's *Ex Parte* Opposition — along with its exhibits — to Twitter's motion to vacate the NDO and stay the warrant. See Gov't Resp. at 11 (listing these materials); ECF No. 16 (Press Reply) at 1–2 (same). Finally, Twitter submits that Judge Howell's partially unsealed Opinion (which redacts information that appears in the previous documents) should be unsealed "in full." Twitter Resp. at 8.

One final piece of procedural history: this Court has already acted on the Application in part. Three weeks ago, it ordered an *ex parte* hearing with the Government to discuss the viability of releasing certain still-sealed documents with redactions. See Minute Order of Nov. 9, 2023. Following that hearing, on November 17, it ordered that several documents that contained very little sensitive information or were already public (some in redacted form) be released in part. See ECF No. 21 (Order to Release Documents). Those documents comprise the Warrant Application, the issued Warrant, the NDO Application, the Government's *Ex Parte* Opposition, and several exhibits thereto. Id. Still, hundreds of pages of documents — namely, the Warrant's supporting Affidavit, several exhibits to the *Ex Parte* Opposition, and redacted pages of various partially unsealed documents — remain sealed. The Court now turns to whether that should remain the case.

**II.     Analysis**

"The public's right of access to judicial records derives from two independent sources: the common law and the First Amendment." In re L.A. Times Commc'ns LLC (L.A. Times III),

4

628 F. Supp. 3d 55, 62 (D.D.C. 2022) (quoting In re Application of WP Co. LLC, 201 F. Supp. 3d 109, 117 (D.D.C. 2016)). As the Press relies on both in seeking access to the search-warrant documents, the Court addresses them in turn. Before such examination, the Court must decide whether a preliminary hurdle — Federal Rule of Criminal Procedure 6(e) — blocks the way to some of what the Press seeks.

The Government claims that Rule 6(e) supplants the common-law and First Amendment rights of access to some of the materials at issue here. See Gov't Resp. at 11 (contending that common-law right of access applies "to the majority of the materials sought here (except to the extent they reveal still-secret matters occurring before the grand jury)"); id. at 8, 13 (similar). That Rule addresses grand-jury secrecy and limits disclosure of matters occurring there. The grand jury's business may also call for "judicial proceedings relating to," but "at arm's length" from, that body, including the resolution of a grand-jury witness's "motion to . . . quash [a] subpoena" or her invocation "of a testimonial privilege." Dow Jones & Co. (Dow Jones I), 142 F.3d 496, 498 (D.C. Cir. 1998). Records of such proceedings ancillary to the grand jury's work are not themselves subject to grand-jury secrecy but are governed by Rule 6(e)(6), which requires that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." (Emphasis added.) Where it applies, Rule 6(e)(6) displaces any First Amendment or common-law right of access. See Dow Jones I, 142 F.3d at 500–04.

Twitter contends that Rule 6(e)'s protections have no application here because a search-warrant application, unlike a motion to quash a grand-jury subpoena, for example, is neither "itself a grand jury proceeding" nor "an 'ancillary' proceeding stemming from actions the grand

5

jury took to 'summon witnesses and documents.'" Twitter Resp. at 4 (quoting Dow Jones I, 142 F.3d at 498). Further, it posits, the Government's "decision to rely on materials taken from a grand jury in this proceeding does not render it a proceeding ancillary to the grand jury's work." ECF No. 18 (Twitter Reply) at 6. Twitter is partially correct because "[s]earch warrants . . . are not subject to Rule 6(e), even when the warrant is issued to obtain evidence as part of an ongoing grand jury investigation." In re New York Times Co., 2023 WL 2185826, at *4 n.6 (D.D.C. Feb. 23, 2023). But even the Press seems to concede that, nonetheless, portions of the sealed materials at issue here enjoy Rule 6(e) protection. See Press Reply at 2–3. Indeed, although the Rule "does not require . . . that a veil of secrecy be drawn over all matters . . . that happen to be investigated by a grand jury," it does "protect the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1382 (D.C. Cir. 1980). At least some of the information in the sealed documents would fit into these categories.

Ultimately, the Court need not decide this issue because even under the common-law and First Amendment right-of-access standards, continued sealing is appropriate. The Court moves on to that analysis now.

    A. Common-Law Right of Access

A common-law right of access attaches to "judicial records," a term defined as those "documents intended to influence a judge's decisionmaking." In re L.A. Times Commc'ns LLC (L.A. Times II), 28 F.4th 292, 297 (D.C. Cir. 2022) (cleaned up). There is no dispute that the documents in question — viz., a search-warrant application along with its supporting materials and its issued counterpart, a nondisclosure-order application, a Government brief with exhibits, and Judge Howell's Opinion — fit that definition. Id. at 296–97 (characterizing memoranda and

"search warrant materials" as judicial records); Gov't Resp. at 9 n.2 (assuming for purposes of Response that warrant materials at issue are judicial records).

"The starting point in considering" an Application like this "is a strong presumption in favor of public access to judicial proceedings." Hardaway v. D.C. Hous. Auth., 843 F.3d 973, 980 (D.C. Cir. 2016) (quoting EEOC v. Nat'l Children's Ctr., Inc., 98 F.3d 1406, 1409 (D.C. Cir. 1996)). When a party seeks to overcome this presumption and seal court records, courts engage in the six-factor inquiry described in United States v. Hubbard, 650 F.2d 293 (D.C. Cir. 1980). Those factors are:

> (1) the need for public access to the documents at issue;
> (2) the extent of previous public access to the documents;
> (3) the fact that someone has objected to disclosure, and the identity of that person;
> (4) the strength of any property and privacy interests asserted;
> (5) the possibility of prejudice to those opposing disclosure; and
> (6) the purposes for which the documents were introduced during the judicial proceedings.

Nat'l Children's Ctr., 98 F.3d at 1409 (citing Hubbard, 650 F.2d at 317–22). The Court will address each separately.

   1. Factor One

The first factor, "the need for public access to the documents at issue," weighs in favor of disclosure. To start, "[t]he public has an especially strong interest in reviewing documents 'specifically referred to in the trial judge's public decision.'" Vanda Pharms., Inc. v. Food & Drug Admin., 539 F. Supp. 3d 44, 52 (D.D.C. 2021) (citation omitted); In re Grand Jury Subpoena, Judith Miller (Miller I), 438 F.3d 1138, 1140 (D.C. Cir. 2006) ("If the public is to see our reasoning, it should also see what informed that reasoning."). Here, Judge Howell made significant reference to the Warrant Affidavit and *Ex Parte* Opposition in her now-mostly-public decision. See, e.g., In re Twitter, ECF No. 50-1 (Partially Unsealed Materials) at 172 (citing

"lengthy Warrant Affidavit" supporting implementation of nondisclosure order); id. at 183 (crediting Government's argument that "secrecy interests are particularly salient here . . . based on the evidence outlined in its *ex parte* opposition"). Although the sealed materials are cited in the opinion selectively, "the public also has a transparency interest in knowing what record evidence the Court saw fit to exclude from its explanation of the reasons underlying its ultimate decision." Vanda Pharms., Inc., 539 F. Supp. 3d at 53.

In addition, the presumption of transparency is "accentuated in cases" like this one "where the government is a party." United States v. All Assets Held at Bank Julius Baer & Co., 520 F. Supp. 3d 71, 81 (D.D.C. 2020) (cleaned up). That rule comes from the insight that public attention can act as a strong corrective to government abuses of power. See Hyatt v. Lee, 251 F. Supp. 3d 181, 184 (D.D.C. 2017) (citing the "strong [public] interest in monitoring not only functions of the courts but also the positions that . . . elected officials and government agencies take in litigation"). And, as the Press points out, this case is not just any criminal matter implicating government practices; it is one of historic proportions with massive significance to the body politic. See App. at 4–5; cf. United States v. Harris, 204 F. Supp. 3d 10, 17–18 (D.D.C. 2016) ("Given the nature of Defendant's [campaign-finance] offenses, the Court finds that this is clearly a matter of public interest."). Significant public interests thus hang in the balance.

Twitter also asserts a particularized interest in unveiling the materials in question: nondisclosure, it says, leaves it with "a substantially diminished capacity to craft policies concerning non-disclosure orders, communicate with [its] users about those orders, . . . and, when necessary, challenge those orders in court." Twitter Resp. at 11. In so arguing, Twitter merely articulates a specific manifestation of the general public interest in "understanding what needs to be pleaded" or "what evidence needs to be put forward" to succeed in like cases. Vanda

8

Pharms., Inc., 539 F. Supp. 3d at 52 (cleaned up).  For that reason, Twitter's concerns do not add to the heft of this factor.

The Government, for its part, "does not dispute the significant public interest in the investigation" or suggest that the remaining nonpublic information is irrelevant to understanding Judge Howell's decision.  See Gov't Resp. at 11–12.  It nevertheless contends that "given the extensive amount of information to which the public is already privy[,] . . . the need for public access to the still-sealed documents at issue here is low."  Id. at 11.  In elaborating, however, it states only that the public interest "is far outweighed by the governmental interest in maintaining the integrity of its continuing investigation and [assorted] privacy interests."  Id. at 12.  While that might be true, it is not an argument against the existence of an appreciable public interest in the documents in question.  The Court will conduct such balancing later in the Hubbard analysis.

    2. Factor Two

The second factor — the extent of previous public access — is neutral on the question of unsealing because the documents contain an unruly mix of secret and public facts.  Some of the details in the sealed materials are not just nonpublic, but are arguably related to the operation of the grand jury, a type of information ordinarily protected by the most stringent of secrecy rules.  Balancing out that fact, conversely, the documents also refer to a good deal of publicly available evidence.  In the Government's words, "the affidavit interweaves into its narrative facts made public elsewhere—such as in the indictment, in unrelated court filings, . . . in congressional proceedings," and in "press reports."  Gov't Resp. at 4, 14.  Some of those widely known facts nonetheless remain sensitive, as unsealing them would allow the public to discern which facts the Government views as reliable and relevant and give readers insight into the "scope and direction" of its investigation.  In re Sealed Search Warrant, 622 F. Supp. 3d 1257, 1262 (S.D.

Fla. 2022). By contrast, the Court strains to understand how revealing facts already included in the public indictment — as opposed to facts made public elsewhere in, say, press reports — would divulge any new information about the focus of the Government's investigation. The facts at issue, then, run the gamut from highly sensitive to entirely public.

Conducting the Hubbard analysis separately for the public and nonpublic facts within the sealed documents would entail hard work for little reward. The Government raises serious practical concerns with redacting all but entirely public and non-sensitive information, which is "inextricably intermingled" with more sensitive details. See Gov't Resp. at 14. Having reviewed the documents, the Court agrees that a piecemeal treatment of their contents would serve little purpose; the required redactions would leave them difficult to read and of little value to the public above and beyond what it already has access to. Cf. Miller I, 438 F.3d at 1140 (unsealing subpoena in part where investigation ongoing because "discrete portions of the eight pages can be redacted without doing violence to their meaning"). Where redactions are clearly practicable, moreover, the Court has already ordered unsealing. See Order to Release Documents. To sum up, this factor does not move the needle in either direction because of the mix of secret, somewhat public, and fully public particulars weaved together in the documents.

The third, fourth, and fifth Hubbard factors, by contrast, support nondisclosure.

3. Factor Three

As for the third, "the fact that a party moves to seal the record weighs in favor of the party's motion." Zapp v. Zhenli Ye Gon, 746 F. Supp. 2d 145, 149 (D.D.C. 2010). The Government's opposition to unsealing therefore adds slightly to the case for nondisclosure.

4. Factor Four

The fourth Hubbard factor, "the strength of any property and privacy interest asserted," lends moderate support to the Government's position. Two distinct privacy interests are at stake here: those of "the swearing government agent" and those of "individuals and entities (in addition to former President Trump) that the government considers relevant to the investigation." Gov't Resp. at 3. As to the first, protecting law enforcement from "being harassed and intimidated" mid-investigation is important. In re Sealed Search Warrant, 622 F. Supp. 3d at 1263; United States v. All Petroleum, No. 23-882 (D.D.C. May 2, 2023), ECF No. 4 at 4 (D.D.C. April 10, 2023) (countenancing "a privacy interest that implicates potentially grave threats to a sensitive maritime operation and the individuals engaged in it"). The investigating law-enforcement officers involved in this case must be kept anonymous to allow the Government to proceed unhampered in its investigative efforts.

As to the second privacy issue, the Government rightly states that, "[a]lthough a search warrant is not a formal allegation of a crime, the affidavit's narrative, if unsealed, would essentially levy such allegations against . . . unindicted individuals." Gov't Resp. at 4. "[T]he mere association with alleged criminal activity as the subject or target of a criminal investigation carries a stigma that implicates an individual's reputational interest." In re WP Co., 201 F. Supp. 3d at 122; see id. at 123 (collecting cases recognizing this in FOIA context); L.A. Times III, 628 F. Supp. 3d at 67–68 (similar). That privacy interest is particularly weighty for those not "provided a forum in which to refute the government's accusations," such as those not yet charged with a crime. In re WP Co., 201 F. Supp. 3d at 122. On top of all that, the media spotlight trained on the instant investigation heightens the reputational concerns here. The above militates in favor of sealing under the fourth Hubbard factor.

The Press resists this conclusion, submitting that some of those individuals implicated by unsealing are public figures who have "diminished expectations of privacy." Press Reply at 5. To be sure, the D.C. Circuit has instructed that in applying Hubbard, courts must assess whether privacy interests are attenuated because "the very subject of the investigation has acknowledged it" or "the investigation involved actions taken by a public official in his public capacity." L.A. Times II, 28 F.4th at 298. The Press acknowledges that its arguments likely do not apply to all the witnesses and conspirators, some of whom "may be otherwise-private citizens." Press Reply at 5. But it neglects to recognize that, even for those its arguments might apply to, "[a]ttenuation of privacy rights . . . does not equate with extinguishment of those rights." L.A. Times III, 628 F. Supp. 3d at 68. The Press also does not claim that a majority of the individuals targeted in this investigation have confessed to such status. Cf. id. at 69 (finding privacy rights of unindicted public officials so attenuated as to allow disclosure because they publicly disclosed details of investigation themselves). The privacy concerns of nonpublic individuals involved, together with the reduced but extant interests of any public officials, align the fourth factor squarely in favor of sealing.

As with the second factor, redactions are no silver bullet. As the court overseeing a similar request to unseal warrant materials relating to the search of Mar-a-Lago concluded, "[T]he public notoriety and controversy about this search [makes it] likely that even witnesses who are not expressly named in the Affidavit would be quickly and broadly identified over social media and other communication channels, which could lead to them being harassed and intimidated." In re Sealed Search Warrant, 622 F. Supp. 3d at 1263; see also In re WP Co., 201 F. Supp. 3d at 128 (concluding that "due to the degree of media scrutiny already garnered," redaction of search-warrant materials was "insufficient to protect . . . compelling privacy,

reputational, and due process interests"). Here, the media has already engaged in speculation about redacted identities of those discussed in the Indictment. See, e.g., Holly Bailey et al., Here Are The Trump Co-Conspirators Described in The DOJ Indictment, Wash. Post (Aug. 1, 2023), https://perma.cc/QX8G-KPN5 (reporting on possible identities of unnamed co-conspirators). The fourth factor accordingly weighs in favor of sealing the documents as a whole.

    5. Factor Five

The fifth factor — prejudice to the party opposing disclosure — is the weightiest factor in this case. Although Trump has been indicted, "investigation of other individuals continues." Special Counsel Jack Smith Delivers Statement, U.S. Dep't of Justice (Aug. 1, 2023), https://perma.cc/MJ5V-AVJ6. The Government accordingly hopes to keep private "details about the government's investigative methods, including the precise information it sought from the materials Twitter was ordered to produce; specific events and individuals of interest to the investigation; and the government's internal procedures for warrant execution." Gov't Resp. at 3. Zooming out, unsealing would make plain "the scope or direction of the continuing investigation." Id. at 4. The Court agrees that these are compelling interests that deserve significant weight. See In re WP Co., 201 F. Supp. 3d at 127 ("[E]nsuring that investigators are able [to] obtain information and assistance from individuals with direct knowledge of criminal conduct is critical to law enforcement efforts and the government's compelling interest in protecting the public.").

In Twitter's view, "[N]ow that the target of the investigation has been publicly indicted and arraigned (and through those actions, witnesses and subjects have been alerted to how they fit within the investigation and prosecution)," sealing is no longer necessary. See Twitter Resp. at 3–4. On the contrary, the need for secrecy remains "heighten[ed]" even after an indictment

has been issued, as long as the investigation is ongoing.  See Miller I, 438 F.3d at 1141 (holding, following an indictment, that "the special counsel is entitled to conduct his investigation out of the public eye and with the full cooperation of witnesses who have no fear their role in the investigation will lightly be disclosed").  Twitter's assumption that the Indictment has laid bare all there is to know about the investigation is insufficient to discount the Government's compelling interest in conducting its investigation in secret.

      6.  Factor Six

The final Hubbard factor — the purposes for which the documents were introduced — favors unsealing for reasons similar to those discussed concerning the first factor.  Disclosure is the norm where "the parties explicitly intend the Court to rely on the sealed materials in adjudicating their dispute."  Vanda Pharms., 539 F. Supp. 3d at 57 (cleaned up).  "The more relevant [information] is to the central claims of the litigation, the stronger the presumption of unsealing the [information] becomes."  Harris, 204 F. Supp. 3d at 17–18; see CNN v. FBI, 984 F.3d 114, 120 (D.C. Cir. 2021) ("When a sealed document is considered as part of judicial decisionmaking, the sixth factor will oftentimes carry great weight.").  There is no doubt that the sealed materials were central to Judge Howell's decision to issue the warrant and NDO and that this factor thus supports disclosure.

*   *   *

As any reader keeping score has observed, the Hubbard analysis in this case is mixed.  Ultimately, the undeniable need to protect an ongoing criminal investigation tips the balance toward the Government's request to continue sealing.  There may yet come a time when press access becomes appropriate, but at present the Application is a premature bid for sensitive information pertaining to an active investigation.

B. Constitutional Right of Access

The First Amendment separately requires courts to make criminal proceedings open and available to the public under certain circumstances. To determine when this constitutional right of access has force, courts consider the two factors known as the "experience and logic" test: (1) whether "there has been a tradition of accessibility" to the proceedings in question; and (2) whether public access would "play[] a particularly significant positive role in the actual functioning of the process." Press-Enterprise Co. v. Superior Court of Cal. for Riverside Cnty. (Press-Enterprise II), 478 U.S. 1, 9–11 (1986). If the right of access applies, the Government can overcome it only by showing that "closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. at 13–14 (citation omitted).

In arguing that no right of access applies here, the Government does not disaggregate the experience and logic components of this test. It instead argues in a blanket fashion that the right is inapplicable to search-warrant materials involved in an ongoing investigation. See Gov't Resp. at 17–18. The Press similarly does not discuss experience separately from logic, nor does it levy a meaningful response to the Government's argument. See App. at 5 (citing authority for proposition that right of access applies to search-warrant materials at investigation's conclusion); Press Reply at 6 (baldly asserting that the "Government does not meaningfully dispute whether the First Amendment right of access applies to these records"). Twitter's arguments, by contrast, do track the test. Addressing the experience prong, it contends that warrant materials are "'historically open to the public' because . . . they fall within the well-established common law right of access." Twitter Resp. at 11 (citation omitted). As for logic, Twitter says, transparency in the warrant process gives the public a chance to assess judicial reasoning and deters courts

15

from acting "as a rubber stamp for the police." Id. at 10 (citation omitted).  The Court will, like Twitter, adhere to the test and take experience and logic one at a time.

First up is experience.  The historical practice is somewhat muddled, but it suggests that the First Amendment does not open search warrants and related documents to public examination when an investigation is ongoing.  Search-warrant applications traditionally have been filed *ex parte* and thus out of the public's view.  And while executed warrants "are routinely filed with the clerk of court without seal," In re Search Warrant for Secretarial Area Outside Off. of Gunn, 855 F.2d 569, 573 (8th Cir. 1988), that does not necessarily bespeak a "history of unrestricted access."  Times Mirror Co. v. United States, 873 F.2d 1210, 1214 (9th Cir. 1989).  When it comes to an active investigation, the Government "has always been able to restrict access to warrant materials by requesting a sealing order, which courts have granted freely upon a showing that a given criminal investigation requires secrecy."  Id.; see also In re Search of Fair Finance, 692 F.3d 424, 430 (6th Cir. 2012) ("We find no evidence . . . of documents filed in search warrant proceedings historically being made open to the press and public [after the search is executed]."); Baltimore Sun Co. v. Goetz, 886 F.2d 60, 64 (4th Cir. 1989) ("[P]roceedings for the issuance of search warrants are not open."); United States v. All Funds on Deposit at Wells Fargo, 643 F. Supp. 2d 577, 583 (S.D.N.Y. 2009) ("Warrant application proceedings are highly secret in nature and have historically been closed to the press and public[.]").  The option of secrecy to protect an investigation is a hallmark of search-warrant proceedings.

Neither the Press nor Twitter offers arguments to overcome this history.  To start, the Press misses the mark insofar as it implies that because Trump has been indicted, the instant search warrant does not, in fact, implicate an ongoing investigation.  See App. at 5 (citing cases

involving closed investigations). The Court has no reason to doubt the Government's representation that its investigation into 2020 election interference continues. See Gov't Resp. at 15. Twitter comes closer by pointing out that the common-law right of access covers search-warrant materials without regard to the existence of an ongoing investigation. Such a common-law right is an "appropriate consideration to take into account when examining the scope of the First Amendment." In re New York Times Co., 585 F. Supp. 2d 83, 89 (D.D.C. 2008). That factor alone, however, does not outweigh the clearly limited historical access outlined above. See In re Search of Fair Finance, 692 F.3d at 431 (rejecting dispositive influence of common-law right of access); United States v. El-Sayegh, 131 F.3d 158, 160 (D.C. Cir. 1997) (calling common-law right "broader" than that created by First Amendment). Experience is therefore against the Press.

Nor does it fare any better on the logic factor. In light of the law-enforcement interests at stake, disclosing warrant materials mid-investigation would not position the public to play a "'significant positive role in the functioning' of the proceeding." Times Mirror Co., 873 F.2d at 1214–15 (quoting Press-Enterprise II, 478 U.S. at 13–14). To be sure, public participation might work certain salutary effects on the warrant process, just as public access "may operate as a curb on prosecutorial or judicial misconduct" in other criminal proceedings. See In re Gunn, 855 F.2d at 573. Still, those effects are dwarfed by "the damage to the criminal investigatory process that could result from open warrant proceedings." Times Mirror Co., 873 F.2d at 1215; see also In re New York Times Co., 585 F. Supp. 2d at 90 ("[W]ith respect to warrants, openness plays a significant positive role in the functioning of the criminal justice system, at least at the post-investigation stage.") (emphasis added). For instance, revealing the subjects of an investigation and the Government's information sources mid-investigation could result in flight, evidence

destruction, or other forms of obstruction. This potential for serious harm does not always dissipate at the first indictment's return. As the Fourth Circuit has recognized, sealing after that point may still be necessary because "the affidavit may describe continuing investigations, disclose information gleaned from wiretaps that have not yet been terminated, or reveal the identity of informers whose lives would be endangered." Baltimore Sun Co., 886 F.2d at 64; see also In re Search of Fair Finance, 692 F.3d at 432 (similar). That is precisely the situation here. As such, neither factor in the Press-Enterprise II test indicates that there is a First Amendment right of access to these warrant materials.

While this Circuit has not yet embraced such a conclusion in a precedential decision, it has noted in an unpublished one arising in the FOIA context that "there is no clear tradition of public access to search warrant materials related to an ongoing investigation." Computer Professionals for Social Responsibility v. Secret Service, 1993 WL 20050 (D.C. Cir. Jan. 5, 1993). Indeed, the Circuit had the benefit of the opposing view announced by the Eighth Circuit when it so held. See id. (citing In re Gunn, 855 F.2d 569 (8th Cir. 1988)). The Court accordingly has little trouble joining the near-unanimous chorus of judicial opinions that the public enjoys no constitutional right to obtain warrant materials relating to an ongoing investigation.

Even accepting for the sake of argument that a qualified right of access existed, the Press's First Amendment argument would fall short. The Eighth Circuit's treatment of such a qualified right in In re Gunn is telling. That court noted that the "[r]ecognition of a qualified First Amendment right of access . . . does not mean that the [sealed materials] must automatically be disclosed." In re Gunn, 855 F.2d at 574 (citation omitted). First, it concluded that the fact of an ongoing investigation was enough to meet the Government's burden of

18

showing a compelling interest.  Id. (taking note of "substantial probability that the government's on-going investigation would be severely compromised if the sealed documents were released"). It also determined that "line-by-line redaction of the sealed documents was not practicable" because "[v]irtually every page contain[ed] multiple references to" sensitive information.  Id.  As explained already, the Government has shown here that the extensive redactions necessary to protect its investigation would render the documents of little meaning or value to the public.  The Court is therefore satisfied that sealing the documents entirely is a justified and narrowly tailored course of action.

### III. Conclusion

For the foregoing reasons, the Court will deny what remains of the Press's Application. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date:  November 29, 2023